## Minnotte Appeal.

Argued March 27, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused July 29, 1963.

*Vincent M. Casey,* with him *Margiotti & Casey,* for appellant.

*Richard L. Thornburgh,* with him *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for trustee, appellee.

*Roy Thomas Clark,* with him *Kenney, Stevens, Hill & Clark,* for appellee.

*C. Donald Gates, Jr.,* with him *Brandt, Reister, Brandt & Malone,* for appellees.

OPINION BY MR. JUSTICE EAGEN, June 4, 1963:

This is an appeal from a decree of the Court of Common Pleas of Allegheny County dismissing exceptions to a schedule of distribution of a trust fund consisting of monies in a terminated profit sharing plan of a corporation.

On December 31, 1954, Alloy Manufacturing Company, Inc. (Alloy), adopted a profit sharing plan for the benefit of its salaried employees. Substantial contributions were made to the fund by Alloy. Appellant Minnotte was a one-third owner of the common stock of the company and a salaried employee. On June 22, 1958, Minnotte and the other shareholders of Alloy sold their entire holdings to Salem-Brosius, Inc. (Salem). The latter then caused Alloy to be dissolved and transferred all of its assets to Alloy Manufacturing Corporation (Corporation), a newly formed corporation and a wholly owned subsidiary of Salem. As part of the agreement of sale, Corporation assumed all obligations under the profit sharing plan involved. Certain amendments to the plan were made with the consent of all parties to facilitate its assimilation into Corporation's operation. Further, as part of the sale agreement, Minnotte entered into an employment contract with Corporation and agreed to continue as one of its officers and employees for a five-year period.

Minnotte suffered two heart attacks in 1958, and asked leave to resign as an officer and employee of Corporation. This suggestion was accepted and Minnotte's employment terminated on September 30, 1958.

Although not material to the determination in the instant case, Minnotte subsequently, in 1959, organized his own business and actively participated as a full-time employee therein.

From the inception of the plan in 1954 until the termination of his employment with Corporation in 1958, Minnotte made regular and personally required contributions. With the termination of his employment with Corporation, these contributions ceased.

In 1960, Corporation was dissolved and plans were made to terminate the profit sharing plan. This was effectuated on August 18, 1961. The successor corporation did not make any contributions to the plan since

profits were never realized from the operation of the business. However, employees of Alloy and of Corporation made contributions from 1954 until July 24, 1961.

When the plan was terminated, Minnotte was given a check in the sum of $2160.97, representing the total sum of his own personal contributions to the fund plus interest. The trustee maintained that this was his full share under conditions stipulated in the trust instrument. Minnotte, on the other hand, claims that he is entitled to receive in addition to his personal contributions, his aliquot portion of all contributions made by the employer during the plan's existence. The court below rejected his claim. The correctness of this decision is raised by this appeal.

Under the trust provisions, sums contributed by an employee were fully vested in the employee at all times, but no vested right accrued to the employee in the sums contributed by the employer until the employee had participated in the plan for a full six-year period. Under this last mentioned provision, obviously Minnotte did not qualify. However, certain exceptions to this provision were stipulated in the plan. The exception herein pertinent provided, inter alia, that if an employee terminates his service because of "physical or mental disability" his interest in the employer's contributions immediately vested. Minnotte asserts that he is partially disabled and that he is entitled to a full vested interest in the employer's contributions to the fund under the foregoing exception. The pivotal question is the connotation of the term "physical or mental disability" in this particular section of the trust instrument. Did it mean total and permanent disability only, which Minnotte fortunately did not suffer, or did it encompass partial disability as well?

Minnotte's rights rise no higher than those given in the trust instrument. In construing this writing, it is

basic that it must be read as a whole and every portion thereof considered in determining its intent and true purpose: *McMillin v. Titus,* 222 Pa. 500, 72 A. 240 (1909); *Harrity v. Continental-Eq. T. & T. Co.,* 280 Pa. 237, 124 A. 493 (1924); *Cerceo v. DeMarco,* 391 Pa. 157, 137 A. 2d 296 (1958); *Pritchard v. Wick,* 406 Pa. 598, 178 A. 2d 725 (1962). Stated another way, the intention of parties to a written instrument is to be garnered from a reading of the entire writing and not from detached portions, it being necessary to consider every part thereof in order to resolve the meaning of a particular part as well as that of the whole: *Mowry v. McWherter,* 365 Pa. 232, 74 A. 2d 154 (1950), and *Cerceo v. DeMarco,* supra. Moreover, specific provisions ordinarily will be regarded as qualifying the meaning of broad general terms in relation to a particular subject: *First National Bank of East Conemaugh v. Davies,* 315 Pa. 59, 172 A. 296 (1934); *Philadelphia v. Phila. Transp. Co.,* 345 Pa. 244, 26 A. 909 (1942).

A reading of the entire instrument involved leads inescapably to the conclusion that permanent and total disability was necessary on Minnotte's part in order for him to qualify for a vested interest in the employer's contribution to the fund. That this was the true intent is patently evident from a consideration of subparagraph (g) of the instrument. This paragraph states that permanent and total disability must exist for a period of at least twelve months and be established by the testimony of two qualified physicians before the employee receives a vested interest in the employer's contribution to the fund. While subsequent section (i) (under which appellant claims), refers only to "physical or mental disability" and not to "permanent and total disability," this necessarily refers back to sub-paragraph (g) and must be read in connection therewith.

This is the only reasonable construction that follows from a reading of the entire writing. Total and permanent disability is described therein with particularity, and stringent requirements as to time and proof of such disability are spelled out. It is significant that nothing is said in the trust instrument concerning the criteria to be used in establishing a condition of "partial disability." Further, it would be a gross anomaly that an employee, who is only partially disabled, should receive the same total benefits as one permanently and totally disabled, and to require the latter to definitely prove his condition, while no such responsibility is placed upon the individual claiming to be partially disabled. Such construction would be absurd, unreasonable and unconscionable.

Appellant's additional contention, that the trust terminated as a matter of law in the year 1958 because its purpose failed, is without merit and is effectively answered in the able opinion of the court below.

Decree affirmed. Each side to pay own costs.