Baltic Development Company, Inc., Appellant, *v.* Jiffy Enterprises, Inc.

412

Argued April 30, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David N. Bressler*, with him *Sheridan P. Hunt, Jr.*, for appellant.

*Leonard Dubin*, with him *Philip C. Patterson*, and *Blank, Rome, Klaus & Comisky*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 9, 1969:

Appellant, Baltic Development Company (Baltic) is the owner of a seven-story structure located at 146 to 150 North 13th Street, Philadelphia. Appellee, Jiffy Enterprises, Inc. (Jiffy), had occupied the first floor of the building, under a lease and successive renewals of the lease, for a total term extending from October 1, 1955, to September 30, 1966, at a yearly rental of $6,000.00. At the end of its last renewal, or shortly prior thereto, Jiffy vacated the premises.

On May 12, 1967, Baltic was granted leave of court to enter a judgment by confession against Jiffy on the warrant of attorney contained in the lease. On May 17, 1968, judgment was entered against Jiffy in an

amicable action to confess judgment; an assessment of damages amounting to $26,080.37, together with an affidavit of default, was also filed. The damages were broken down into: Losses, $24,115.00; Interest, $723.45; and Attorney's Commission at 5%, $1,241.92. In the affidavit of default, Baltic averred that it had suffered losses in the amount of $24,115.00 as a result of damage to the leased premises caused by Jiffy's violations of various covenants in the lease.

On July 19, 1967, Jiffy filed a petition requesting that the judgment be either stricken or opened. Baltic filed an answer, in essence denying the material allegations of the petition. Jiffy then proceeded to depose one Donald Rosen, an employee of Lanard & Axilbund, the managing agent of Baltic's 13th Street premises.

On August 2, 1968, the Court of Common Pleas of Philadelphia County, McDEVITT, P. J., granted Jiffy's petition to open judgment. Baltic brought this appeal. We affirm.

A study of the lease indicates to us that there is at least an important factual question as to whether Jiffy has been accorded the procedural safeguards to which it is entitled before a judgment can be confessed against it on a warrant of attorney. Jiffy contends that the confession of judgment was invalid because, inter alia, it had not received notice of the alleged default, and because there was no averment in the affidavit of default that the repairs necessitated by the alleged default had been made. While we cannot agree with Jiffy that both of these are prerequisites to a valid confession of judgment, a reading of the intricate provisions of the lease convinces us that a failure either to notify or to make the repairs invalidates the judgment.

Jiffy relies, as did the court below, on ¶34 of the rider to the lease, which provides, in relevant part: "34: 'Lessor agrees in the event that, and when and as often as Lessee is in default hereunder in any re-

spect, excepting only as to the payment of rent and/or any other sums collectible hereunder as rent, . . . Lessor will not exercise any right or remedy herein conferred or provided by law unless and until Lessor shall have given Lessee written notice of the alleged default by registered mail, and Lessee, for a period of ten (10) days after the receipt of such notice, shall have failed to remedy the alleged default or to do the act, or refrain from doing the act, provided for herein and referred to in such notice.' " Thus, with the exception of default as to rent or sums collectible as rent, Jiffy was entitled to ten days' notice of default.

Baltic replies that the sums involved in the instant case were indeed collectible as rent, and cites ¶6 of the lease. That paragraph provides: "(a) Lessee agrees to pay *as rent* in addition to the minimum rental herein reserved *any and all sums which may become due* by reason of the failure of Lessee to comply with all of the covenants of this lease and any and all damages, costs and expenses which the Lessor may suffer or incur by reason of any default of the Lessee or failure on his part to comply with the covenants of this lease, and each of them, and also any and all damages to the demised premises caused by any act or neglect of the Lessee." (Emphasis ours)

Jiffy replies, however, that the sums were not "due" because Baltic had not fulfilled the necessary procedural steps. We agree. ¶8 provides: "Lessee covenants and agrees that he will without demand . . . Keep the demised premises clean and free from all ashes, dirt and other refuse matter; replace all glass windows, doors, etc., broken; keep all waste and drain pipes open; repair all damage to plumbing and to the premises in general; keep the same in good order and repair as they now are, reasonable wear and tear and damage by accidental fire or other casualty not occurring through negligence of Lessee or those employed

by or acting for Lessee alone excepted. The Lessee agrees to surrender the demised premises in the same condition in which Lessee has herein agreed to keep the same during the continuance of this lease." ¶13(g), referring specifically to ¶8(b) states: "In the event of the failure of Lessee promptly to perform the covenants of Section 8(b) hereof, Lessor may go upon the demised premises and perform such covenants, the cost thereof, at the sole option of Lessor, to be charged to Lessee as additional and delinquent rent." Although a violation of another of the covenants of the lease may permit the recovery of unliquidated sums as rent, thus avoiding the necessity of notice before confessing judgment, ¶13(g) provides specifically for the violation of ¶8(b). It is a well known rule of construction that the specific controls the general. *Minotte Appeal,* 411 Pa. 492, 192 A. 2d 394 (1963). While ¶13(g) does not in terms say that unliquidated sums resulting from violation of ¶8(b) cannot be collected as rent, the negative implication certainly arises therefrom. The discussion of rent in ¶13(g) would be pure surplusage if the sums were collectible as rent regardless of whether the repairs were made. Again, rules of construction dictate that all parts of a lease be ascribed some meaning, if at all possible. *Powell Appeal,* 385 Pa. 467, 123 A. 2d 650 (1956); cf. *Devlin v. Osser,* 434 Pa. 408, 254 A. 2d 303 (1969). Moreover, if there were any ambiguity in this lease, it would of course be construed most strongly against Baltic, which stands in the shoes of the drafter. *Galligan v. Arovitch,* 421 Pa. 301, 219 A. 2d 463 (1966).

What is most important, however, is that the interpretation which we have adopted makes good sense. Under this approach, if the lessor himself has not made the repairs, the sums allegedly due do not constitute rent (or sums collectible as such) and notice is therefore required under ¶34. The lessee is then enabled to

make the repairs. On the other hand, if the lessor himself makes the repairs, the sums due then constitute rent, and no notice is required. This is surely reasonable, for notice at this point would be valueless. Either way, however, the lessee is protected against a judgment for an exorbitant amount. Either he can make the repairs himself, or someone else has already made them.

We find nothing in *Kros v. Bacall Textile Corp.*, 386 Pa. 360, 126 A. 2d 421 (1956), cited by Baltic, inconsistent with this interpretation of the lease. That case involved the alleged violation of a term of the lease other than ¶8(b), i.e., that requiring the lessee to use every possible precaution against fire. The sums that became due as rent fell within the general language of ¶6, not the specific language of ¶13(g). Since the lessor was not even authorized to make the repairs himself and charge them as rent, he could hardly have been required to do so.

The cases that we do find relevant are *Gratz v. Margolis*, 186 Pa. Superior Ct. 268, 142 A. 2d 375 (1958), and *Grady v. Schiffer*, 384 Pa. 302, 121 A. 2d 71 (1956). *Gratz v. Margolis* was a case, like the instant one, involving an alleged violation of ¶8(b) and the specific language of what is now ¶13(g)—then ¶13(e) —permitting the lessor to go upon the premises to repair. It was there held that the averment in the affidavit of default as to the *estimated* cost of repairs would not suffice.

Reliance was placed in *Gratz* upon *Grady v. Schiffer*, supra, upon which we also rely. This Court there stated at page 306: "It is a firmly established rule of construction in the case of warrants of attorney to confess judgments that the authority thus given must be clear, explicit and strictly construed, that if doubt exists it must be resolved against the party in whose favor the warrant is given, and that all proceedings

thereunder must be within the strict letter of the warrant: [citing a long line of cases]."

It is our view that the lease does not even approach the clarity necessary to permit a confessed judgment to stand in the instant case. The court below ordered it opened, and could have even ordered it stricken. Since Jiffy took no appeal, we cannot order it stricken, but we can affirm the order opening the judgment.

When the standard to be applied on appeals from order opening a judgment is considered, surely our only possible response must be to affirm. We have often stated that a petition to open judgment is an equitable proceeding addressed to the sound discretion of the court, and that the grant or refusal of such a petition will not be reversed in the absence of a clear abuse of discretion or an error of law. *Stark v. Breen,* 435 Pa. 20, 255 A. 2d 115 (1969); *Stephens v. Bartholomew,* 422 Pa. 311, 220 A. 2d 617 (1966); *Universal B. Sup., Inc. v. Shaler H. Corp.,* 409 Pa. 334, 186 A. 2d 30 (1962). Viewed in light of that standard of review, Jiffy's case is even stronger. Not only did Baltic fail to meet the legal requirements for confessing judgment against Jiffy but the equities too are all against Baltic.

As pointed out by the court below, the sum claimed as damages on default is the equivalent of more than four years' rent! This in itself would cause a court to cast a chary eye toward the proceedings. In addition, the deposition of the employee of the managing agent, Lanard & Axilbund, revealed that Lanard & Axilbund's maintenance department had inspected the premises shortly after Jiffy had vacated. The maintenance department had prepared a report and submitted a list of recommendations of repairs necessary to restore the premises to rental condition, which list is a defense exhibit here. We agree with the court below that many of the items on the list constitute repairs

necessitated by "reasonable wear and tear" for which Jiffy would not be liable under the lease. Baltic argues strenuously that Jiffy has not shown that the repairs for which judgment was confessed were those set forth on the maintenance department's list. Even if we were to grant the unlikely possibility that the $24,115.00 worth of damages did not represent everything that was wrong with the premises, Baltic's argument merely reinforces our interpretation of the lease provisions to require either notice to the lessee or actual repairs by the lessor. Under a proper construction of the lease, Jiffy need not be required to guess at the composition of the judgment confessed against it. Under all the circumstances of this case, it was surely not error for the court below to have opened judgment.

The order is affirmed.