## Joseph Horne Co. v. Retail Store Employees Union

*Hayes C. Stover,* for plaintiff.

*Sanford A. Segal,* for defendant.

OLBUM, J., June 9, 1971.—A preliminary injunction may be granted "only in a clear case where the ground for it is not open to question": McDonald v. Noga, 393 Pa. 309, 312. See also Albee Homes, Inc. v. Cadie Homes, Inc., 417 Pa. 177, 181; Vulcanized Rubber & Plastics Company v. Scheckter, 400 Pa. 405, 411; Locust Club v. Hotel and Club Employees' Union, 397 Pa. 357, 367.

Plaintiff seeks preliminarily to enjoin defendants from picketing in any manner whatsoever at any of plaintiff's premises for the purpose of inducing a consumer boycott, and from engaging in certain illegal activities designed to harass plaintiff and its customers. We are satisfied from the testimony presented at a hearing on plaintiff's application that certain facets of defendants' picketing are enjoinable, but it is our view that plaintiff has failed to present a case so clear and unquestionable as to warrant the granting of an injunction against peaceful and orderly picketing by defendants.

It appears that plaintiff and Local 1407, Retail Store Employees Union, are parties to agreements covering three of plaintiff's stores, which agreements were executed in 1968 and do not expire until February 15, 1973. The agreement for plaintiff's Downtown Pittsburgh store covers only a partial unit comprising 337 regular employes. It further appears that on December 30, 1970, following an election, the National Labor Relations Board certified defendant local union as the collective bargaining agent for a store-wide unit of 1,013 regular employes, including those covered by the

existing 1968 agreement. Prior to the election, plaintiff had urged the National Labor Relations Board to reject the union's petition for an election on the ground that plaintiff's 1968 contract with that union, running until February 15, 1973, was a bar to an election. That contention was specifically rejected by the regional director of the board, who held that "a noncertified union is not barred by its own contract . . . even where, as here, the unit sought is broader than that which is covered by the existing contract."

It also appears that defendant union, as a result of the recent NLRB certification, desires to "modify" the existing contract by extending its coverage to the newly certified employes, while plaintiff is willing only to negotiate a new contract to cover the newly certified employes, without disturbing the 1968 contract. This impasse has led to the picketing undertaken by defendants at plaintiff's stores and to the distribution of leaflets, bumper stickers and balloons bearing the message that plaintiff is "unfair." Leaflets have also been distributed to employes at several industrial plants. However, none of plaintiff's employes is on strike.

Plaintiff bases its application for a preliminary injunction on the contention that the union's picketing activities are enjoinable because they constitute a breach of the three "valid subsisting" labor agreements between plaintiff and defendant union covering three of plaintiff's retail stores, or because they tend "to procure the disregard of" those agreements, thus removing this dispute from the purview of the Labor Anti-Injunction Act of 1937, P. L. 1198, sec. 4, 43 PS §206d, and invoking the inherent equity powers of the court.

The three agreements relied upon are virtually identical in their provisions pertinent to this proceed-

ing. In the recital of the agreement covering plaintiff's Pittsburgh store, it is set forth:

"WHEREAS and in consideration of the desire of the Employer and the Union parties to this Agreement to stabilize employment and to do away with strikes, boycotts and stoppage of work and it being their intention to be legally bound by the provisions herein, do agree as follows:"

In the agreements covering plaintiff's two other stores, the recitals set forth:

". . . and whereas the parties to this Agreement desire to stabilize employment and to do away with strikes, boycotts and stoppage of work and it being their intention to be legally bound by the provisions herein, do agree as follows:"

However, the pertinent operative provision in each contract states:

"(a) Sufficient methods having been established to settle in an amicable manner any grievance or dispute which may arise under the terms of this Agreement, there shall be no strikes by the members of the Union nor any lockout of employees by the Employer during the period covered by this Agreement."

Plaintiff contends that the "desire" of the parties expressed in the recital of each agreement "to stabilize employment and to do away with strikes, boycotts and stoppage of work" commits the union to refrain from engaging in a boycott of plaintiff, despite the fact that the operative provisions of each agreement make no mention of boycotts.

We find the conclusion ineluctable that the specific operative provision in the agreements is controlling, that the agreements forbid strikes by members of the union and lockouts by the employer, and that the language of the recital in each agreement expressing the "desire" of the parties "to do away with strikes,

boycotts and stoppage of work" must yield to the specific language of the operative provision, which forbids only strikes and lockouts. In Baltic Development Company, Inc. v. Jiffy Enterprises, Inc., 435 Pa. 411, the court said:

"It is a well known rule of construction that the specific controls the general."

In Minnotte Appeal, 411 Pa. 492, 496, it was said:

"Moreover, specific provisions ordinarily will be regarded as qualifying the meaning of broad general terms in relation to a particular subject: [citations]."

And in First National Bank of East Conemaugh v. Davies, 315 Pa. 59, 63, the court said:

"The specifically enumerated items guaranteed must, therefore, control the general statement in the preamble."

In Nelson Dairies, Inc. v. Royal, 6 D. & C. 2d, 371, 373, the court quoted "the general rule" and the exegesis which appear in 17A C. J. S., Contracts, §314, pages 177-178, as follows:

". . . recitals in a contract will not control the operative clauses thereof unless the latter are ambiguous . . . where the recital is so inconsistent with the covenant or promise that they cannot be harmonized, the latter, if unambiguous, prevails. In other words, recitals . . . cannot control the clearly expressed stipulations of the parties, or create a doubt which otherwise does not exist; and where the recitals are broader than the contract stipulations, the former will not extend the latter."

See also Neal D. Ivey Company v. Franklin Associates, Inc., 370 Pa. 225, 232; Philadelphia v. Philadelphia Transportation Company, 345 Pa. 244, 251.

It cannot be contended that there is any ambiguity in the quoted operative provision of the contracts. The

union agreed not to strike and the employer agreed not to engage in a lockout of its employes. It appears to us that, for whatever reason, the parties deliberately chose to omit the word "boycotts" from the operative provision. We do not understand why, if the parties intended to outlaw boycotts, that word was not included in the operative provision. The inclusion of "boycotts" in the recital and the exclusion of that word in the operative provision would indicate to us that the exclusion was not an inadvertence, and that the parties intended to be bound only by the operative provisions of the agreement. Our view is that the expression in the recital that "the parties to this Agreement desire to stabilize employment and to do away with strikes, boycotts and stoppage of work" is a pious declaration of the desideratum of the parties which was intended to be effectuated only in the manner set forth in the specific provisions of the contract. This is indicated in the concluding language of the recital, which is: ". . . it being their intention to be legally bound by the provisions herein, [the parties] do agree *as follows:*"

We are not impressed by plaintiff's argument in its supplemental brief that "the recital is a statement of the consideration for the Agreement," and that "the sole valuable consideration the union can contribute is a promise that it will not interrupt the employer's business during the life of the labor agreement." This argument might have some validity if it were necessary to spell out the consideration underlying the agreements. But that necessity, if any, was obviated by the parties' stated "intention to be legally bound by the provisions herein." The Uniform Written Obligations Act of May 13, 1927, P. L. 985, sec. 1, 33 PS §6, provides that a contract shall not be invalid or unenforceable for lack of consideration if it "also contains

an additional express statement, in any form of language, that the signer intends to be legally bound." The inclusion in these contracts of those magic words renders the expressed "desire" of the parties surplusage from the standpoint of consideration, and buttresses our conclusion that the expressed "desire" of the parties was intended to be only that, and not a part of the operative provisions of the contracts.

In our judgment, plaintiff has not met its burden of establishing a right to a preliminary injunction with such lucidity that "it is not open to question." Therefore, we may not enjoin the picketing activities of defendant union which are carried on in a lawful manner. However, we are satisfied by the evidence that members of defendant union have interfered with the untrammeled movement of pedestrian traffic in the vicinity of plaintiff's Pittsburgh store and with the ingress and egress of plaintiff's customers entering and leaving the store; that the bumper stickers have been used to deface plaintiff's property; and that the balloons which have been distributed by the pickets have been used to annoy and harass plaintiff's customers and to interfere with their free ingress and egress. Counsel for defendants has offered to enter into a consent order designed to terminate these highly objectionable activities. We shall sign such an order, limiting the number of pickets to two at each entrance of plaintiff's store, requiring that the pickets keep moving and refrain from impeding pedestrian traffic and from impeding ingress and egress to and from plaintiff's property; and enjoining the harassment of plaintiff's customers, prospective customers or employes, and the distribution or possession of bumper stickers and balloons in connection with picketing activities. The information defendants seek to disseminate in the vicinity of plaintiff's premises regard-

ing plaintiff's alleged unfairness to the union or to its members, or to plaintiff's employes, or to organized labor can be adequately disseminated by leaflets, without bumper stickers and balloons, which are too readily turned to mischievous activities.

### ORDER OF COURT

Now, June 9, 1971, after hearing, and upon consideration thereof and of the briefs of counsel, plaintiff's application for a preliminary injunction to enjoin the picketing by defendants is denied. Counsel for the parties will join in the preparation of a consent order to be submitted to the court consonant with the foregoing opinion.