**DeHaven v. Selected Risks Ins. Co. (No. 2)**

*John J. Pentz, Jr.,* for plaintiff.

*Brose, Pasevistillo, LaBarr & Jacobs,* for defendant.

WILLIAMS, P. J., February 17, 1976.—Floyd J. DeHaven, plaintiff, brought this assumpsit action

to recover from Selected Risks Insurance Company, defendant, the legal expense incurred by plaintiff in defending a trespass action against which defendant allegedly was obligated to defend him under the terms of a policy of garage liability insurance issued by defendant to plaintiff. This case was before the court on a prior occasion for consideration of plaintiff's motion for summary judgment under Pa. R.C.P. 1035.

From the pleadings, it appeared that plaintiff, as an individual, had been conducting two businesses: a garage, and a charter bus service. The garage was operated for the repair of vehicles of all types, including plaintiff's own buses. About the first week in September 1964, plaintiff sold to William F. Deibert, Inc. a bus which, according to plaintiff, had been maintained, serviced and repaired during his period of ownership at his garage. On or about September 21, 1964, while this bus was owned and operated by William F. Deibert, Inc. in the City of Bethlehem, a portion of the bus exploded and flew apart, propelling a fragment through the floor and rear seat of the bus, and injuring a minor passenger, Richard Uhle. In civil action no. 39812, instituted by Uhle and his father in the United States District Court for the Eastern District of Pennsylvania against William F. Deibert, Inc. to recover damages for the injury, defendant there filed a third party complaint against "F. J. DeHaven Bus Company," attributing the accident and injury to negligence on the part of plaintiff in the instant case. Defendant declined to undertake the defense of plaintiff in civil action no. 39812 for the alleged reason, inter alia, that the action was not based on the kind of risk covered by plaintiff's policy of insurance. In our opinion, dated June 3, 1975,

DeHaven v. Selected Risks Insurance Company (No. 1), 71 D. & C. 2d 440 (1975), this court analyzed that policy in detail and we concluded:

"Under Item 5 [of the Declarations], there is a space for 'Furnished Auto' and spaces for the rate and advance premium to be charged for such coverage. Since all of these spaces are blank, plaintiff may be considered as having represented to defendant that he was furnishing, at one time, no more than one motor bus to himself for regular use in the charter bus service. If true, plaintiff is entitled to coverage; if not true—and if in fact plaintiff concurrently was furnishing to himself a whole fleet of motor buses for use in the charter service business—then he is not entitled to coverage or defense by the defendant company for the reason that he never declared or paid for insurance against a hazard of that magnitude."

Accordingly, we entered an order withholding disposition of the motion for summary judgment for a period of 20 days to permit plaintiff to file a supplementary affidavit supplying the needed information. On July 7, 1975, counsel for defendant filed a request for admission of facts to which plaintiff responded by filing, on July 21, 1975, a sworn answer. Paragraph 2 of the answer reads, in pertinent part:

". . . Plaintiff admits that he had about eight buses available at all times for school bus and charter bus service to customers; it is denied that he furnished buses to himself, except for use in supplying bus services to third party customers; it is denied that they were used on a regular use basis in actual practice. During the school year, about three buses were used concurrently; during the summer vacation period, although more than one bus was

available for use, there was seldom more than one bus in actual use at any one time."

On February 1, 1976, counsel for the respective parties agreed and stipulated that plaintiff's motion for summary judgment now is ready for disposition on the pleadings and briefs now before the court.

Contemporaneously with the stipulation, counsel for plaintiff has presented a supplementary brief seeking reconsideration of the rationale adopted by the court in the opinion of June 3, 1975. Counsel asserts that the insurance contract is ambiguous because, on the one hand, the "GOH" clause provides *broad* coverage for all operations necessary or incidental to the use of the premises for the purposes of a garage, which includes the repair of all vehicles whether owned by plaintiff or not, while, on the other hand, the provisions relating to "Automobile Hazards" *restrict* the coverage of vehicles owned by plaintiff, but furnished for use in another business; and that the court incorrectly chose the restrictive construction, favoring defendant, the party who drew the contract, rather than the broad construction favoring plaintiff, the insured.

Superficially read, the language of the contract does present the semblance of ambiguity because of the manner in which the concept of "garage operations hazard" is defined. Clarity would have been served better if the concept had been stated in a single definition, explicitly setting forth all the sub-categories of hazard intended to be covered. Instead, the complete concept must be derived by piecing together two definitions:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A.  bodily injury or

"B.  property damage

to which Part I applies, caused by accident and arising out of the *garage operations hazard,* including only the *automobile hazard for which insurance is afforded as indicated in the declarations . . .";* and

"GARAGE OPERATIONS HAZARD. The ownership, maintenance or use of the *premises* for the purposes of a garage, *and* all operations necessary or incidental thereto, hereinafter called 'garage operations'." (Emphasis supplied.)

Both definitions recognize that the conduct of a garage business entails two principal categories of hazard: (1) hazard related to the premises as such, and (2) hazard related to automobiles dealt with on the premises. They differ, however, in the literary treatment of the two hazards. In the first definition, hazard 2 is treated *explicitly* as a component element "included" in the larger concept of garage operations hazard, with reference, for further explication, to the declarations, while hazard 1 is treated by *implication* as part of the residual hazards remaining after hazard 2 has been distinguished and set aside for special treatment. In the second definition, the order is transposed. Hazard 1 is treated *explicitly,* while hazard 2 is treated by *implication,* since any reference to an "automobile hazard" becomes apparent only after one has drawn the reasonable inference that the handling of automobiles is "incidental" to the use of the premises as a garage. In construing the insurance contract, it is the duty of the court to take each and every part of it into consideration and to give effect, if possible, to each part: Richette v. Pennsylvania Railroad, 410 Pa. 6, 19, 187 A.2d 910, 917 (1963);

Powell Appeal, 385 Pa. 467, 476, 123 A.2d 650, 654, 655 (1956); Neal D. Ivey Company v. Franklin Associates, Inc., 370 Pa. 225, 231, 232, 87 A.2d 236, 239 (1952).

Accordingly, when the two definitions are fitted together, it will be seen that hazard 1 (premises) is treated *explicitly* in the second definition and by *implication* in the first, while hazard 2 (automobile) is treated *explicitly* in the first definition and by *implication* in the second. Here, whatever conflict there may be concerning the automobile hazard does not arise between two expressions possessing equivalent semantic force, but between an expression which explicitly contains restrictive provisions and an expression from which such restrictive provisions are completely absent. As a consequence, this issue is governed by the established principle that specific provisions of a contract will be regarded as qualifying and controlling the meaning of broad general terms in relation to a particular subject: Kline v. Marianne Germantown Corporation, 438 Pa. 41, 45, 263 A.2d 362, 364 (1970); Minotte Appeal, 411 Pa. 492, 496, 192 A.2d 394, 396 (1963). The contention of counsel for plaintiff that the court incorrectly adopted the restrictive construction in preference to the broad construction of the contract, therefore, is without merit.

With the filing of plaintiff's sworn answer, quoted above, the only factual issue remaining has been resolved. It indicates clearly that plaintiff owned eight buses, that three of them were used concurrently, and that more than one of them were occasionally, although "seldom," in actual use at any one time. Since plaintiff did not declare any number of buses, furnished for business other than

the garage business, in excess of one, and since he was charged no corresponding premium, plaintiff's motion for summary judgment must be denied.

## ORDER

And now, February 17, 1976, the motion of plaintiff, Floyd J. DeHaven, for summary judgment against defendant, Selected Risks Insurance Company, is denied.