**STATE AUTOMOBILE INSURANCE ASSOCIATION, Plaintiff,**

v.

**YOUNG MEN'S REPUBLICAN CLUB OF ALLEGHENY COUNTY, INC., et al., Defendants.**

**Civ. A. No. 83–2907.**

United States District Court, W.D. Pennsylvania.

July 9, 1987.

Alan H. Perer, Swensen & Perer, Pittsburgh, Pa., for plaintiff.

Rex Downie, Jr., Beaver Falls, Pa., for defendants, Calvin Troup, W. Lee Troup and Anita J. Troup.

Leonard E. Price, Pittsburgh, Pa., for defendants, Andrew M. Bernard, Jr. and Ruth G. Hartman, Adm. of the Estate of Edwin Blythe Hartman, Jr.

Joel Persky, Pittsburgh, Pa., for defendant, Young Men's Republican Club of Allegheny County, Inc.

William C. Robinson, Butler, Pa., for defendant, Donald Jack Myers, Adm. of the Estate of Keith Myers.

Edward J. Balzarini, Jr., Pittsburgh, Pa., for defendant, Maynard Harvey.

John F. Becker, Pittsburgh, Pa., for defendant Neil Rodgers who was dismissed from case on December 8, 1986.

## MEMORANDUM OPINION

DIAMOND, District Judge.

Defendants and plaintiff have moved for summary judgment. These motions raise the single issue of whether the insurance policy between plaintiff and the Young Men's Republican Club covers liability arising from the service of alcohol, in violation of statute, to a patron who is visibly intoxicated. We hold that the policy does not, and we grant summary judgment for plaintiff.

### Background

Plaintiff, State Automobile Insurance Association, brought this declaratory judgment action to ascertain its obligations under an insurance contract between it and the defendant the Young Men's Republican Club of Allegheny County, Inc. ("the Club"). On the night of May 27, 1983, the Club served alcohol to Lawrence Rodgers when he was visibly intoxicated. After he left the Club, Rodgers caused an auto accident, killing and injuring several people. The victims brought suit in the Court of

Common Pleas and obtained verdicts against, among others, the Club. *Hartman v. Croatian National Hall*, 134 P.L.J. 189 (Pa.Com.Pl.1986).[1] Plaintiff has joined the plaintiffs in that action as defendants here.

Under the "Comprehensive General Liability Insurance" contract entered into on May 29, 1982, between plaintiff and the Club, plaintiff agreed to

> pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A.  bodily injury or
>
> B.  property damages
>
> to which this insurance applies, caused by an occurrence....

Complaint, Exhibit A, p. 5.[2] The "Definitions" section of the policy defines "product hazard" as follows:

> "[P]roducts hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

Complaint, Exhibit A, p. 2.

However, the Club also purchased "Completed Operations and Products Liability Insurance" as a "coverage part" to the general liability insurance. This part appears in an endorsement which redefines "products hazard" as follows:

> "[P]roducts hazard" includes bodily injury and property damages arising out of (a) the named insured's products or (b) reliance upon a representation or warran-

ty made with respect thereto; but only if the bodily injury or property damage occurs after physical possession of such products has been relinquished to others. Complaint, Exhibit A, p. 8. The Club paid an annual fee of seventy-eight dollars for this coverage.

The exclusion at issue, exclusion (h) (the "liquor liability exclusion"), appears in an "Exclusions" section that immediately follows the description of coverage. Complaint, Exhibit A, p. 5. Exclusion (h) reads:

> This insurance does not apply:
>
> (h) to bodily injury or property damage for which the insured or his indemnitee may be held liable
>
> > (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or
> >
> > (2) if not so engaged, as an owner or lessor of premises used for such purposes,
> >
> > if such liability is imposed
> >
> > > (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or
> > >
> > > (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
>
> but part (ii) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above....

In their various motions for summary judgment, all parties agree that the only disputed issue is a legal one; therefore,

---

**1.** Pennsylvania does not recognize common law liability for the service of alcohol to persons who become intoxicated and injure themselves or others. *Klein v. Raysinger*, 504 Pa. 141, 470 A.2d 507 (Pa.1983). Liability arises only if the service of alcohol violates a statute, usually the Dram Shop Act, 47 P.S. § 4–493(1), or statutes prohibiting the sale of alcohol to minors. *See id.; Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (Pa.1983); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150 (3d Cir.1986). Thus, to render a verdict against the Club, the jury in *Hartman* must have found that the Club

was licensed to serve alcohol, and it served alcohol to an obviously intoxicated person in violation of the Dram Shop Act.

**2.** Identical copies of the policy appear as Exhibit A to the complaint and Exhibit 1 to the motion for summary judgment on behalf of defendants Hartman, Harvey, Bernard, Troup, and Myers (docket No. 51). We will refer to the copy annexed to the complaint because it is more legible.

resolution of this case on summary judgment is appropriate. *See* Motion for Summary Judgment of defendants Hartman, Bernard, Harvey, Troup, and Myers, para. 8 (docket no. 51); Motion for Summary Judgment by defendant Young Men's Republican Club of Allegheny County, Inc., para 1 (docket no. 34); Plaintiff's Motion for Summary Judgment, para. 6 (docket no. 52), Plaintiff's First Motion for Summary Judgment, p. 2 (docket no. 29). Plaintiff contends, relying on two recent decisions of the Pennsylvania Superior Court, *United States Fidelity and Guaranty v. Griggs*, 341 Pa.Super. 286, 491 A.2d 267 (Pa.Super. Ct.1985), and *Jeddo Stars Athletic Association v. State Automobile Insurance Association*, No. 00385 Phila.1985 (1985) (*per curiam*), that exclusion (h) clearly and unambiguously excludes coverage for the accident at issue. Plaintiff also argues that the "products hazard" endorsement defines a species of products liability insurance meant to apply to defective products. The liability at issue resulted from the service of alcohol to a visibly intoxicated person, not from a defective product. Thus, there is no conflict between the endorsement and exclusion (h). Read as a whole, the insurance contract clearly does not cover the liability at issue.

In support of their motions for summary judgment, defendants argue that, as found by Judge Mansmann in her opinion denying plaintiff's first motion for summary judgment (docket no. 37, February 20, 1985), the exclusion and the endorsement, when read together, create an ambiguity. The endorsement provides coverage for liability arising out of the Club's products. Since the Club's only products were food and drink, a reasonable person would conclude that the endorsement covers liability arising from service to an intoxicated patron. This interpretation conflicts with exclusion (h). Therefore, the policy is ambiguous on this point, and according to well-established principles of insurance law, we must construe this ambiguity against the insurer.

### Discussion

A. Law of the Case.

■ Although no party has raised the issue, as a threshold matter, we must con-

sider whether Judge Mansmann's earlier ruling on plaintiff's motion for summary judgment requires us to rule in favor of the defendants on the present motions. Plaintiff's first motion for summary judgment raised issues identical to the ones before us. In her opinion and order, Judge Mansmann found that plaintiff was not entitled to judgment as a matter of law and went no further than denying plaintiff's motion for summary judgment. However, her reasoning would entitle defendants to summary judgment. Judge Mansmann found an ambiguity in the policy when exclusion (h) and the endorsement were read together. She noted that such an ambiguity must be resolved in favor of the insured, and she concluded, "Having found such ambiguity, in the instant case, the Court resolves it in favor of the insured, Defendant Club." Memorandum Opinion 8. Nevertheless, we find that in the circumstances that confront us, the doctrine of the law of the case does not preclude our disparate resolution of the same issues.

According to the doctrine of law of the case, "judges of co-ordinate jurisdiction sitting in the same court and the same case should not overrule the decisions of each other ... except under the most extraordinary circumstances." *TCF Film Corp. v. Gourley*, 240 F.2d 711, 713 (3d Cir.1957); *see generally Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 168–170 (3d Cir. 1982). This is "a necessary rule of judicial comity to preserve the orderly functioning of the judicial process." *TCF*, 240 F.2d at 714. However, this doctrine directs the court's discretion; it does not deprive the court of power to reconsider an issue already decided. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *United States v. Wheeler*, 256 F.2d 745, 747 (3d Cir.1958).

One of the "extraordinary circumstances" justifying deviation from the law of the case occurs when the judge who made the earlier ruling is unavailable to reconsider it. *TCF*, *supra*. In *TCF*, the Court of Appeals held that reassignment of the orig-

inal judge to another court constituted unavailability in this sense.

Judge Mansmann is unavailable. She has been reassigned to the United State Court of Appeals for the Third Circuit. Judge Mansmann foresaw that this reassignment would require a subsequent judge in the same case to grapple anew with the interpretation of the insurance contract. On January 31, 1985, Judge Mansmann held a status conference at which she indicated that she would deny plaintiff's first motion for summary judgment. As a result of that conference, the Club filed a motion for summary judgment on February 7, 1985. Rather than decide this motion along with plaintiff's motion for summary judgment, on February 12, 1985, Judge Mansmann ordered responses to the Club's motion by February 22, 1985. On February 20, Judge Mansmann issued her opinion and order on plaintiff's motion for summary judgment, without ruling on defendant's motion. On March 27, 1985, in light of her nomination to the Court of Appeals, Judge Mansmann ordered that the Club's motion be held in abeyance pending reassignment of the case. In her order, she found "that the Motion is more appropriately decided by the Judge who will try the case." Thus, in deciding the present motions, we merely follow the course Judge Mansmann outlined shortly after her decision on plaintiff's motion for summary judgment.

■ In addition, deference to the law of the case is inappropriate where the applicable law has changed between the decisions of the first and second judge. *See Zichy v. City of Philadelphia,* 590 F.2d 503, 508 (3d Cir.1979). At the time of her ruling, Judge Mansmann did not have the benefit of *Griggs, supra,* and *Jeddo Stars, supra,* cases in which the Pennsylvania Superior Court concluded that exclusionary clauses identical to the one before us were clear and unambiguous. Though these cases did not change the controlling legal standards, they significantly clarified the application of those standards to the situation we confront. We consider deviation from the discretionary doctrine of law of the case to be appropriate in these circumstances.

## B. Choice of Law.

■ This is a diversity action. All parties assume in their briefs that Pennsylvania law applies. The insurance contract was entered into in Pennsylvania, the insured resides in Pennsylvania, and the accident giving rise to the controversy occurred in Pennsylvania. We agree that under these circumstances, Pennsylvania choice of law principles direct us to apply Pennsylvania law to the interpretation of the contract. *American Contract Bridge League v. Nationwide Mutual Fire Ins. Co.,* 752 F.2d 71, 74–75 (3d Cir.1985); *Houghton v. American Guaranty Life Insurance Co.,* 692 F.2d 289, 291 n. 2 (3d Cir.1982).

## C. The Merits.

Interpretation of an insurance contract presents an issue of law for the court to decide. *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 304, 469 A.2d 563, 566 (1983); *Vlastos v. Sumitomo Marine & Fire Insurance Co.,* 707 F.2d 775, 778 (3d Cir.1983). The Court of Appeals has set forth the applicable principles of interpretation:

> In interpreting an insurance policy, which is a contract, courts are required to determine the intent of the parties as disclosed by the language of the policy. ... However, because insurance policies are frequently considered to be contracts of adhesion, any ambiguity in the policy *"must* be construed against the insurer, and in a manner which is favorable to coverage." ... Nevertheless, the language of the policy may not be tortured to create ambiguities where none exist.

*Houghton v. American Guaranty Life Insurance Co.,* 692 F.2d 289, 291 (3d Cir. 1982) (citations omitted). We should avoid reading ambiguity into the policy, if possible. *Treasure Craft Jewelers v. Jefferson Insurance Co.,* 583 F.2d 650, 652 (3d Cir. 1978). Instead, we "should attempt to view the policy in its entirety, and give

effect, if possible, to all portions of the contract." *Id.*

Given these rules of construction, we can reduce this case to a single issue: is the insurance contract ambiguous? If it is not, we must enforce it as written. If it is ambiguous, however, we must resolve that ambiguity against plaintiff and in favor of defendants. A policy is ambiguous only if reasonably intelligent persons, on considering the policy as a whole, would honestly differ as to its meaning. *Erie Insurance Exchange v. Transamerica Insurance Co.,* 352 Pa.Super. 78, 507 A.2d 389, 391, *pet. for allowance of appeal granted,* 512 Pa. 360, 516 A.2d 1186 (Pa.1986). The reasonable person through whose eyes we view the policy is a member of the general populace, not a savant in the insurance field. *Id.* at 392–393. However, if an exclusion "is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Standard Venetian Blind,* 503 Pa. at 307, 469 A.2d at 567.

■ Two separate panels of the Pennsylvania Superior Court recently examined liquor liability exclusions identical to the exclusion before us, and held that this language was clearly worded, conspicuously displayed, and unambiguous. *See United States Fidelity and Guaranty v. Griggs,* 341 Pa.Super. 286, 491 A.2d 267 (1985); *Jeddo Stars Athletic Association v. State Automobile Insurance Association,* No. 00385 Phila.1985 (1985) (per curiam). As is this case, those cases were actions between insurers and taverns or social clubs to declare the insurers' obligations with regards to the insureds' liability for serving alcohol to visibly intoxicated patrons who then injured third parties in auto accidents. The policies at issue in *Griggs* and *Jeddo Stars* were identical in pertinent part to the policy we are construing. In each case, a coverage section stated that the insurer would pay "all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damages to which this insurance applies...." Complaint, Exhibit A, p. 5; *Griggs,* 341 Pa.Super. at 290, 491 A.2d at 269; *see Jeddo Stars,* slip op. 2. Soon thereafter appeared the heading "Exclusions;" under that heading, an exclusion—in every case exclusion (h)—contained exactly the language we have quoted from the policy before us. *See* Complaint, Exhibit A, p. 5; *Griggs, supra; Jeddo Stars,* slip op. 7; *Supra,* pp. 3–4. Applying the same principles of interpretation that we have cited, the Superior Court held in both *Griggs* and *Jeddo Stars* that exclusion (h), clearly and unambiguously, in terms understandable by the average layman, excluded coverage for Dram Shop liability.

We realize that these decisions do not bind us; rather, we must follow our vision of the Pennsylvania Supreme Court's future holdings. *ACandS, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968, 973 (3d Cir.1985). However, no data persuades us to disregard the Superior Court's "considered judgment." *Id.* Every other Pennsylvania judge to construe this exclusion has found it clear and unambiguous. *See Kelmo Enterprises, Inc. v. Commercial Union Insurance Co.,* 285 Pa.Super. 13, 31, 426 A.2d 680, 689 (1981) (Watkins, J., dissenting)[3]; *Ranochia v. Reliance Insurance Co. of Philadelphia,* 33 Pa. D & C 2d 531, 542 (Pa.Com.Pl.1962). Other courts have reached identical results.[4] Defend-

---

**3.** In *Kelmo,* the majority held a liquor liability exclusion invalid under the principles of *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 327 A.2d 363 (Pa.Super.Ct. 1974); because the insurer did not establish that it had pointed out and explained the exclusion to the individual insured. The majority did not consider the clarity of the exclusion's language. The Pennsylvania Supreme Court overruled *Hionis* in *Standard Venetian Blind, supra.*

**4.** *See Lampliter Dinner Theater v. Liberty Mutual Insurance Co.,* 792 F.2d 1036 (11th Cir.1986); *Morrison v. Miller,* 452 So.2d 390 (La.Ct.App. 1984); *Amherst & Clarence Insurance Co. v. Cazenovia Tavern, Inc.,* 90 A.D.2d 631, 456 N.Y. S.2d 238 (1982), *rev'd as moot,* 59 N.Y.2d 983, 453 N.E.2d 1077 (N.Y.1983); *Heritage Insurance Co. Cilano,* 433 So.2d 1334 (Fla.Dist.Ct.App. 1983); *Stewart v. Bohnert's Estate,* 101 Cal. App.3d 978, 162 Cal.Rptr. 126 (Cal.Ct.App.1980); *New Hampshire Insurance Co. v. Hillwinds Inn, Inc.,* 117 N.H. 350, 373 A.2d 354 (1977).

ants have not brought to our attention, and our research has not disclosed, any case to the contrary. *See Lampliter*, 792 F.2d at 1041 (no jurisdiction has found exclusion (h) to be ambiguous).

We find unconvincing defendants' argument that by modifying the policy to provide coverage for "bodily injury and property damage arising out of (a) the named insured's products," Complaint, Exhibit A, p. 8, the products hazard endorsement abrogates the liquor liability exclusion. The quoted language does not alter the corpus of the policy at all: in its "Definitions" section, the policy defines "products hazard" to include "bodily injury and property damage arising out of the named insured's products." Complaint, Exhibit A, p. 2. The endorsement merely eliminates the requirement that the injury occur away from the premises. This modification extends coverage to situations in which products, such as food and beverages, injure patrons before they leave the Club; it leaves undisturbed the scope of coverage for an intoxicated patron who leaves and causes injury to himself and others.

Most important, we see no conflict between the endorsement and exclusion (h). Using the canon of interpretation that specific language qualifies more general language in the same document, *see Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir.1973); *In re Alloy Manufacturing Co. Employees Trust*, 411 Pa. 492, 496, 192 A.2d 394 (1963); *cf. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, —— U.S. ——, ——, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987) (statutory interpretation), a reasonably intelligent reader would construe the policy as a coherent and consistent whole, admitting of no ambiguity. In the policy, along with its endorsement, plaintiff agreed to indemnify the Club for a general category of liability: that arising from bodily injury or property damage, including injury or damage caused by the Club's products. From that category, how-

ever, plaintiff and the Club agreed to carve out exclusions for certain situations in which liability may arise. Liability arising from service of alcohol in violation of statute is one such situation. To read the policy in any other way would effectively negate not only the liquor liability exclusion before us, but any other exclusion that purported to exclude coverage for situations that otherwise would fall within the ambit of broad language in the coverage section of a policy, even if that exclusion appeared in the clearest language.

We note that in reaching our conclusion we do not rely on plaintiff's argument that since the products hazard endorsement covers only products liability for defective products, alcohol, so far as it is not defective, cannot give rise to products liability within the scope of the policy. While Dram Shop liability arises from the negligent service of alcohol in violation of a statutory duty, rather than from any defect in the product, *see Klein v. Raysinger, supra;* Restatement Second of Torts, § 402A comments i, j (1977); the liability does arise in the context of the sale of a product. The average person might reasonably interpret "products hazard" to include service of alcoholic beverages. *Cf. Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 765 (3d Cir.1985) (a diet book can be a defective product within the meaning of products liability law).

Our interpretation of the policy does not drain the endorsement of any effect. The endorsement still provides coverage for the rather substantial liability that could result from the service of contaminated food and drink. The policy as we interpret it is neither unreasonable nor unconscionable. *See Standard Venetian Blind*, 503 Pa. at 307, 469 A.2d at 567.[5]

### Conclusion

We find that exclusion (h) to the policy between plaintiff and the Club clearly and

---

**5.** Nothing in the record or pleadings suggests that this is a case in which the insured "applie[d] for a specific type of coverage and the insurer unilaterally limit[ed] that coverage, resulting in a policy quite different from what the insured requested...." *Tonkovic v. State Farm Mutual Automobile Insurance Co.*, 513 Pa. 445, ——, 521 A.2d 920, 925 (Pa.1987). Therefore, the limitations on the rule of *Standard Venetian Blind* described in *Tonkovic* do not apply here.

unambiguously excludes coverage for liability arising from the service of alcohol in violation of a statute. For this reason, we grant plaintiff's motion for summary judgment.

An appropriate order will follow.