[Civ. No. 3830. Fifth Dist. Feb. 7, 1980.]

RUTH MAE STEWART, Plaintiff and Appellant, v.
Estate of WILLIAM BOHNERT et al., Defendants and Respondents.

COUNSEL

Sigelman & Stein, Rick M. Stein and Paul S. Sigelman for Plaintiff and Appellant.

Clifford, Jenkins & Brown, James E. Brown and Anthony L. Leggio for Defendants and Respondents.

OPINION

**BALLANTYNE, J.*—**

### STATEMENT OF THE CASE

This appeal is from a judgment entered after the trial court granted a motion for summary judgment filed on behalf of the estate of William Bohnert by Royal Globe Insurance Company (hereinafter Royal Globe). The action was commenced by appellant Ruth Mae Stewart (hereinafter appellant) against the Pumproom, the Smokehouse and Doe defendants. Appellant sought to recover for damages she sustained as a result of an auto accident, in which her vehicle allegedly collided with a vehicle operated by an intoxicated driver, Donald Haworth. Appellant alleged that on the day of the accident Haworth had been served alcoholic beverages at each of the taverns named as defendants; she further alleged the tavern keepers knew or in the exercise of reasonable care should have known that Haworth was intoxicated and that he would drive a motor vehicle while intoxicated. Appellant alleged that her injuries were a proximate result of the defendants' sale of alcoholic beverages to Haworth.

---

*Assigned by the Chairperson of the Judicial Council.

Decedent William Bohnert was the owner of the Smokehouse Cafe at the time of the alleged accident. The trial court permitted appellant to proceed against the estate of Bohnert pursuant to Probate Code section 721. Under section 721, appellant's claim against the Bohnert estate is limited to the available insurance coverage. Royal Globe issued a "Comprehensive General Liability Insurance" policy to Bohnert, individually and doing business as Smokehouse Cafe; this policy was in effect at the time of the alleged accident. The motion for summary judgment was premised on the theory that the insurance policy contained an exclusion which precluded coverage under the facts as alleged by appellant.[1]

On appeal, appellant contends that summary judgment was inappropriate under the circumstances of this case. Appellant argues that exclusion (h) in the Royal Globe policy is not applicable under the facts of this case. She also argues that even if the exclusion is on its face applicable, it is unenforceable as a matter of public policy because the exclusion is inconsistent with the insured's reasonable expectation of coverage and it is not sufficiently conspicuous or clear to be enforceable. She further contends that Royal Globe is estopped to assert the applicability of the exclusion, because the insurance company failed to warn the insured of this "gap" in coverage. Finally, appellant makes apparently contradictory arguments that the motion for summary judgment should have been denied because it was either too late or premature.

## DISCUSSION

Preliminarily, it is well established that when the affidavits or declarations in support of a motion for summary judgment are exam-

---

[1]Exclusion: "This insurance does not apply:

". . . . . . . . . . .

"(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable

"(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

"(2) If not so engaged, as an owner or lessor of premises used for such purposes,

"if such liability is imposed

"(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

"(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

"but part (ii) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above;" (italics deleted).

ined, and no triable issue of fact exists, and when these affidavits or declarations state facts, which if proved, would be sufficient to sustain a judgment in favor of the moving party, a motion for summary judgment is proper. (*Pettis* v. *General Tel. Co.* (1967) 66 Cal.2d 503, 505 [58 Cal.Rptr. 316, 426 P.2d 884].) ■ Here, where the estate of Bohnert would only be liable to appellant insofar as Bohnert's insurance covers appellant's claims, and where there are no other issues of fact, the sole issue before the trial court was one of law, and summary judgment was the appropriate vehicle to determine the case.

■ When, as in the present case, the interpretation of a written instrument is a question of law, i.e., not dependent on a resolution of conflicts in extrinsic evidence, the appellate court must make its own independent determination of the contract's meaning. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Pepper Industries, Inc.* v. *Home Ins. Co.* (1977) 67 Cal. App.3d 1012, 1018 [134 Cal.Rptr. 904].)

Having determined that summary judgment was an appropriate remedy for the respondent in the trial court, we will now turn to the contentions of the appellant.

■ *Whether exclusion (h) in the Royal Globe policy applies on its face to the facts alleged by appellant.*

■ Under the settled rules of construction applicable to insurance policies, any uncertainty or ambiguity must be resolved against the insurer. Moreover, the existence of an ambiguity will be determined from a layman's perspective. Although such ambiguity cannot be based on a strained interpretation of the policy, nevertheless, where semantically possible, the policy should be construed so as to achieve its manifest objective of indemnifying the insured against the type of losses to which the policy relates (*ibid.*; *California State Auto. Assn. Inter-Ins. Bureau* v. *Antonelli* (1979) 94 Cal.App.3d 113, 118 [156 Cal.Rptr. 369]; *Estate of Coate* (1979) 98 Cal.App.3d 982, 988 [159 Cal.Rptr. 794]). ■ Although an insurer has a right to limit its coverage and the courts must respect an exclusion which is plain and explicit, to be effective an exclusionary clause must be "conspicuous, plain and clear." Exclusionary clauses are to be construed against the insurer and liberally in favor of the insured. (*Pepper Industries, Inc.* v. *Home Ins. Co.*,

*supra*, 67 Cal.App.3d at p. 1018; see also *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168]).

Applying the foregoing principles to the policy in the present case, we must first examine the wording of the policy to determine whether it is semantically possible to adopt a construction which would provide coverage. (Refer to fn. 1, *ante*, for the language of the exclusion.)

The words of the policy are not in and of themselves ambiguous. While exclusion (h) may not flow well, all of the necessary words are included to apprise the reader of the policy, that it does not cover a tavern keeper who serves liquor to an intoxicated person, unless the insured is not in the business of manufacturing or serving alcoholic beverages, but is merely an owner or lessor of premises used for such purposes. We reach this conclusion after making the following odyssey through the policy's verbiage: We commence with the heading "Exclusions" set forth in boldface type on the lefthand column of the page; we then find the words "This insurance does not apply. . ."; next we skip to: "(h) to bodily injury or property damage for which the insured or his indemnitee may be. held liable"; we then read subsection (1); then move down to the words "if such liability is imposed"; then read subsection (ii) "by reason of the selling, serving or giving of any alcoholic beverage. . .to a person under the influence of alcohol or which causes or contributes to the intoxication of any person." The last three lines limiting the exclusion do not apply here because Bohnert was the operator of the "Smokehouse" and therefore was a person described in subsection (1), rather than (2) which goes on to state: "*if not so engaged*, as an owner or lessee of premises used for such purposes." (Italics added.) (Here, the policy in question was issued to Bohnert individually and also *doing business as the "Smokehouse."*)

A literal reading of the policy thus compels the conclusion that exclusion (h) was intended to bar coverage. Any other interpretation would be strained, and a court should not adopt a forced construction where the words of the policy are not ambiguous (*Jarrett* v. *Allstate Ins. Co.* (1962) 209 Cal.App.2d 804, 810 [26 Cal.Rptr. 231]). Wording similar to that in the present policy was held to exclude coverage for liability incurred by a vendor of alcoholic beverages who served such beverages to an intoxicated person in the case of *Reserve Ins. Co.* v. *Hall* (1975) 44 Cal.App.3d 569, 571-572 [118 Cal.Rptr. 758].

Appellant seeks to distinguish the *Reserve* case in several ways. First she argues that *Reserve* is factually distinguishable, because the intoxicated person in that case was an employee of the insured cocktail lounge, who was acting within the scope of her employment when she was involved in an auto accident. The *Reserve* policy also contained an exclusion precluding coverage for damages resulting from operation of an automobile by any person in the course of his employment by the insured (*id.*, at p. 571). However, the *Reserve* court clearly indicated that coverage was precluded there by both the "scope of employment" exclusion *and* the exclusion similar to that in the present case (*id.*, at p. 572).

Appellant also seeks to distinguish *Reserve* under the theory that the policy there made no distinction between an insured engaged in the business of selling alcohol and an insured who is merely the owner of premises used for such purposes, whereas the policy in the present case does draw such a distinction. However, this distinction is of no consequence, because there is no evidence to raise a triable issue of fact as to whether Bohnert was engaged in the business of serving alcoholic beverages.

Finally, appellant seeks to avoid the effect of the *Reserve* case under the theory that the appellate court there was not apprised of the history of liquor liability in California as provided in *Vesely* v. *Sager*.[2] However, the *Reserve* court did indicate its familarity with the *Vesely* decision (44 Cal.App.3d at pp. 571-572). Consequently, all of appellant's attempts to distinguish *Reserve* fail.

We therefore conclude that a reading of exclusion (h) in the policy manifests an intent on the part of the insurer not to provide coverage under the type of factual situation presented herein.

> *Whether the wording and placement of the*
> *exclusion within the policy are sufficiently*
> *clear and conspicuous to render the*
> *exclusion enforceable.*

In order to be enforceable, an exclusionary clause must be "'conspicuous, plain and clear'" (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d

---

[2]In support of her argument that such exclusionary language was not intended to reach the type of liability asserted here, appellant suggests (without support) that this type of language was standard even before the California Supreme Court decided *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151].

263, 273; see also *State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 202 [110 Cal.Rptr. 1, 514 P.2d 953]). ■ The insurer bears a heavy burden to draft exclusionary clauses in clear language comprehensible to lay persons. As stated in a decision by the First District Court of Appeal refusing to enforce a purported exclusionary provision: "The provisions and exceptions in an insurance policy must be strictly construed against the insurer, who is bound to use language clear to the ordinary mind. [Citation.] If the insurer would create an exception to the general import of the principal coverage clauses, the exception must be phrased in clear and unmistakable language. [Citations.] Where a policy contains a sea of print defining the promised benefits, an exclusionary clause incidentally inserted in the policy merely creates an ambiguity and should not be literally interpreted so as to disappoint the reasonable and normal expectations of the insured." (*Migliore* v. *Sheet Metal Workers' Welfare Plan* (1971) 18 Cal.App.3d 201, 204 [95 Cal.Rptr. 669].) Thus, even if the exclusionary language literally precludes coverage, courts have occasionally refused to enforce such a clause where enforcement would defeat the normal expectations of the insured.

■ In the present case, appellant contends that the exclusion is too inconspicuous and unclear to apprise the lay person reading the policy of this gap in coverage; according to appellant, enforcement of exclusion (h) would improperly defeat the reasonable expectations of the insured. Appellant makes a cogent argument that a lay person examining this policy would expect coverage under the factual situation presented here. Appellant points out that the policy is prominently labeled a "Comprehensive General Liability Policy" on portions which a lay person is likely to examine. Since the insurer knew the nature of Bohnert's business (the policy was issued to Bohnert doing business as the Smokehouse Cafe), Bohnert might reasonably expect, *absent any express representations to the contrary*, that a "comprehensive" policy would cover the ordinary transactions incident to that type of business. (Cf. *Ritchie* v. *Anchor Casualty Co.* (1955) 135 Cal.App.2d 245, 257-258 [286 P.2d 1000]; see also *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 272.)

Conversely, respondent points out that the word "Exclusions" is printed in *boldface* type. It is a close question whether this darker print, coupled with the double-spacing used to set off the word "Exclusions," are sufficient to make the exclusion "conspicuous" and to apprise the

lay reader that the coverage is not truly "Comprehensive" as the policy title suggests. (Cf. *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d 263, 273; see also *Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 569 [83 Cal.Rptr. 394, 463 P.2d 746].)

However, we are not compelled to resolve this "close question" of the insured Bohnert's "reasonable expectations" of insurance coverage solely upon the sterile language of the insurance policy. As a part of the augmented record herein, there is the uncontradicted sworn declaration of Lee Landes, reciting the following matters:[3] Landes had been the insurance agent for Bohnert and the Smokehouse; at the time Landes took over the account the insurance coverage did not include liquor liability; and that Bohnert had told Landes he was well aware that he did not have such liquor liability coverage. Landes further declared that on the occasion of each renewal of Bohnert's comprehensive liability insurance policy, he discussed with Bohnert the matter of liquor liability insurance, and on each occasion up to and including issuance of the policy which was in force as of March 29, 1975, Bohnert made the specific decision not to pay the premium for liquor liability insurance. Landes further declared that he had been aware of the Supreme Court decision in *Vesely* v. *Sager* since 1971 or 1972, wherein the Supreme Court ruled that liquor liability could be imposed under the common law in the absence of a "Dram Shop" statute; and that he had advised Bohnert he would not be protected in such circumstances if he did not carry liquor liability coverage, to which Bohnert replied he was in control of the situation at his place of business, and that he did not feel that the additional coverage would be worth the extra premium he would have to pay.

We conclude that by combining the language of the policy with the circumstances surrounding the execution of the policy it would not de-

---

[3]Prior to the hearing on appeal, this court granted appellant's motion to augment the record on appeal to include the opposition to motion for summary judgment which was filed on December 2, 1977, in the trial court. At oral argument before this court, counsel for the respondent referred to the affidavit of Lee Landes, the insurance agent for Royal Globe, which was filed in support of the respondent's motion for summary judgment. Counsel for the appellant objected to said affidavit on the grounds of "hearsay." We ordered a further augmentation of the record to include the said affidavit of Lee Landes and it is now a part of the record in these proceedings.

We note in passing that appellant never made a request for additional time to depose Landes. If such a request had been made, the summary judgment statute would have required the trial court to deny or continue the motion if it appeared that Landes' deposition could bring to light facts essential to oppose the motion (Code Civ. Proc., § 437c).

feat the "reasonable expectations" of the insured Bohnert by enforcing exclusion (h) contained in the policy.

■ Appellant's assertion at oral argument that Landes' declaration constitutes inadmissible hearsay is without merit. Hearsay evidence is defined as "evidence of a statement that was made other than by a witness while testifying at the hearing and *that is offered to prove the truth of the matter stated*." (Evid. Code, § 1200, subd. (a), italics added.) Here, the statements of Landes and Bohnert, as reflected in Landes' declaration, are received not to prove the truth of the matters asserted in the statements but only to establish that such statements and conversation took place. When used for this purpose, the statements are not regarded as hearsay, and no special exception to the hearsay rule need be invoked for their admission. (Witkin, Cal. Evidence (2d ed. 1966) §§ 462-463, pp. 424-425.)

Assuming arguendo that the statements in Landes' declaration constitute hearsay, such statements still would be admissible. Appellant, by raising the "reasonable expectations" of the insured Bohnert, puts in issue Bohnert's mental state. It is well established that a statement by the declarant may be admitted if it tends to show the mental state or attitude of the person who heard it or read it. Typical issues on which such statements are commonly offered are knowledge and belief. (Witkin, Cal. Evidence, *supra*, §§ 468-470, pp. 429-430.) Also, such evidence would be acceptable under section 1261 of the Evidence Code which provides that "Evidence of a statement is not made inadmissible by the hearsay rule when offered in an action upon a claim or demand against the estate of the declarant if the statement was made upon the personal knowledge of the declarant at a time when the matter had been recently perceived by him and while his recollection was clear."

*Whether the exclusion is unenforceable because it contravenes a public policy.*

■ Appellant contends that enforcement of exclusion (h) should be denied because public policy dictates that insurers provide coverage for vendors of alcoholic beverages who serve such beverages to intoxicated persons who injure others on the highways of our state. Appellant contends that this public policy is evidenced by the decisions in *Vesely* v. *Sager, supra,* 5 Cal.3d 153 and *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719]. Such a contention is

without merit. We construe those cases as merely recognizing a cause of action against the vendors of alcoholic beverages and not as mandating that insurers must provide coverage for such vendors in every insurance policy.

*Whether respondent's motion*
*for summary judgment should*
*have been denied as either*
*untimely or premature.*

Appellant next raises the somewhat contradictory arguments that the motion for summary judgment was either premature or too late. Without citing any authority therefor, appellant argues that it should first be determined whether the Smokehouse was responsible for appellant's injuries before the determination is made whether the insurance policy issued to the Smokehouse covers that liability. However, since recovery against the estate of Bohnert is limited to the available insurance coverage under Probate Code section 721, it would be futile to determine the question of liability in the abstract, before determining whether the policy covers such liability. The very quintessence of a summary judgment motion is to avoid the delay and expense of needless trials. In light of this purpose, it was clearly proper to allow the determination of insurance coverage before the determination of liability.

Appellant also contends that the motion should have been denied because it was made shortly before the date set for trial and motions made just prior to trial are disfavored. Respondent's motion for summary judgment was filed on November 22, 1977; trial was set for February 21, 1978. Thus, the motion was made approximately three months prior to the scheduled trial date. At the time respondent's motion for summary judgment was filed, there was no statutory requirement that such a motion be heard any particular length of time before trial. (See Leg. Counsel's Dig. of Assem. Bill No. 2721, Stats. 1978, ch. 949, p. 2929.)[4] Since there was no timing requirement in ef-

---

[4]Since respondent's motion for summary judgment was filed, Code of Civil Procedure section 437c has been amended to require that a motion for summary judgment be heard at least 45 days before the date of trial, unless the court for good cause orders otherwise (Stats. 1978, ch. 949, § 2, p. 2930). Even under this recent amendment, the motion would have been timely, because it was heard on December 2, 1977.

fect when respondent filed its motion for summary judgment, the trial court was not required to deny it as untimely.

*Whether Royal Globe is estopped to assert the applicability of the exclusion.*

Appellant's final contention is that Royal Globe should be estopped to assert exclusion (h) because Royal Globe breached its covenant of good faith and fair dealing by failing to notify the insured that the comprehensive liability policy did not cover the type of liability which could be imposed under *Vesely* v. *Sager*. Appellant contends that the insurer had a duty to warn its insured of this gap in coverage, after the insurance company learned that *Vesely* v. *Sager* could be the basis for imposition of liability against a tavern keeper. Appellant analogizes this situation to a manufacturer's duty to warn consumers of defects in a product which are not apparent upon sale but which later become known to the manufacturer. Respondent does not answer this contention in its brief. We find this contention to be without merit for the reasons that: First, appellant cites no authority; and second, under the uncontroverted facts in the present case, Bohnert, the insured, was fully apprised by his insurance agent Landes of the "gap" in his coverage.

The judgment is affirmed.

Brown (G. A.), P. J., and Hopper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 3, 1980.