Gertrude McGRIFF, a/k/a Gertrude McGriff Wooden, By and Through her General Guardian, NORWEST CAPITAL MANAGEMENT & TRUST CO., United States Fidelity & Guaranty Company, an insurance corporation, and National Farmers Union Insurance Company, an insurance corporation, Plaintiffs and Appellants,

v.

UNITED STATES FIRE INSURANCE COMPANY, an insurance company, Defendant and Appellee,

v.

FRATERNAL ORDER OF THE EAGLES OF RAPID CITY, South Dakota, Third Party Defendant.

No. 16272.

Supreme Court of South Dakota.

Argued Jan. 9, 1989.

Decided March 8, 1989.

Curt Ireland, Rapid City, for McGriff Guardianship.

Dennis W. Finch of Finch, Viken, Viken & Pechota, Rapid City, for plaintiffs and appellants.

Franklin J. Wallahan of Wallahan & Watson Rapid City, for defendant and appellee; Benjamin J. Eicher of Wallahan & Watson Rapid City, on the brief.

MILLER, Justice.

In this case of first impression, we hold (1) that exclusion (h)(1), generally found in comprehensive liability insurance policies, applies to nonprofit corporations; and (2) that the term "engaged in the business" contained in such exclusion is not ambiguous. As a result, a fraternal, nonprofit organization which operates an on-sale liquor establishment is not provided coverage by its general liability insurance policy because of the specific language contained in the policy's exclusions.

## FACTUAL BACKGROUND

On May 1, 1983, Dennis Allen Busche (Busche), who was driving on the wrong side of the road while under the influence of alcoholic beverages, caused a two-car accident resulting in serious injuries to Gertrude McGriff. Through her guardian, Norwest Capital Management and Trust Company (appellant or McGriff), a suit was commenced against both Busche and the Fraternal Order of Eagles of Rapid City, South Dakota (Eagles). The claim against Eagles was grounded on (1) their claimed negligent serving of alcoholic beverages to Busche at a time when he was already intoxicated and (2) their failure to prevent Busche from driving when he left the Eagles' premises.

McGriff's suit against Eagles was settled for over $359,000 by a stipulation and agreement, which among other things protected the subrogation rights of United States Fidelity and Guaranty Company and National Farmers Union Insurance Company (appellants). These two companies had made payments totalling $100,000 under the uninsured motorist coverage provisions of their respective policies.

Appellants commenced this declaratory judgment action against United States Fire Insurance Company (appellee) which had issued a comprehensive general liability insurance policy to Eagles. Appellee answered, denying coverage on the basis of exclusions (h)(1) and (h)(2) of the policy.

The trial court granted summary judgment for appellee. We affirm.

On appeal, appellants argue that exclusion (h)(1) is not applicable to a nonprofit corporation and that exclusion (h)(2) does not apply because the action against Eagles is based on common-law negligence rather than upon violation of statutes or ordinances. Because we affirm the trial court on the basis of exclusion (h)(1), we need not address the issues concerning exclusion (h)(2).

## ISSUE

### WHETHER EXCLUSION (h)(1) EXCLUDES COVERAGE FOR NONPROFIT CORPORATIONS.

### DECISION

Exclusion (h)(1) reads as follows:

This insurance does not apply:

. . . . .

(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable
(1) as a person or *organization engaged in the business of* manufacturing, distributing, *selling or serving alcoholic beverages*[.][1] (Emphasis added.)

The general thrust of appellants' argument is that because Eagles is a nonprofit fraternal organization, it is *not* "engaged in the business" of selling or serving alcoholic beverages. Thus, they assert that the policy language "engaged in the business" is ambiguous. They suggest that the phrase could mean either an activity conducted for a direct profit motive or an activity that realizes a profit but is not engaged in for the personal income of its owners. In essence, appellants argue that we must look at the character of the organization rather than the activity it performs.

Appellants rely on three cases which we concede are generally on point: *Newell–Blais Post No. 443, Veterans of Foreign Wars v. Shelby Mutual Ins. Co.*, 396 Mass. 633, 487 N.E.2d 1371 (1986); *American Legion Post No. 49 v. Jefferson Ins. Co. of New York*, 125 N.H. 758, 485 A.2d 293 (1984); and *Laconia Rod & Gun Club v. Hartford Acc. & Indem. Co.*, 123 N.H. 179, 459 A.2d 249 (1983).

The New Hampshire Supreme Court in *Laconia, supra,* held that exclusion (h) was ambiguous because the contracting parties reasonably differed as to the clause's meaning. The *Laconia* court found that "business can be used in two senses. It can be used in a broad sense to mean any regular activity that occupies one's time and attention, with or without a direct profit objective, or it can be used more narrowly to mean an activity with a direct profit objective." *Id.,* 459 A.2d at 251 (citing 12A C.J.S. *Business* 464–65 (1980)). Given what they perceived to be an ambiguity in the policy, the court strictly held it against the insurer and found coverage.

The New Hampshire Supreme Court, relying on *Laconia,* found in *American Legion Post No. 49, supra,* that the Legion, a nonprofit veterans organization, did not have a direct profit motive in operating its bar and therefore was not in the business of selling alcoholic beverages for the purposes of the exclusion. The court's conclusion was not altered by the fact that the Legion derived substantial revenues from its operation of the bar, noting that the character of the organization, not the profitability of its liquor sales in a given month or year, determines whether the exclusion would apply. The court found that the Legion was a nonprofit club which used its

---

1. Exclusion (h)(2), as an alternative to (h)(1), provides:
   (2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed
   (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or
   (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
   but part (ii) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above.

862

bar revenue to meet its operating expenses, provide benefits to its members and fund its various activities. It also noted that although the Legion derived substantial revenue from its liquor sales, it did not have the same kind of direct profit motive that a commercial venture such as a tavern would have, where the profits provide personal income for its owners.

The Massachusetts Supreme Court reached the same conclusion in *Newell–Blais Post No. 443, supra.* There, the court noted that the word "business" was not defined in the policy, and that the term must be given its ordinary and usual meaning and must be construed in a manner that the insured would reasonably understand to be the scope of the coverage. The court then noted that Webster defined "business" as "a usually commercial or mercantile activity customarily engaged in as a means of livelihood," and that the Post, a nonprofit organization incorporated for charitable purposes, was not engaged in the "business" of selling or serving alcoholic beverages within the clear meaning of exclusion (h)(1). *Id.,* 487 N.E.2d at 1373.

Appellee also offers three central cases in support of its position that the language of (h)(1) excludes coverage because Eagles was engaged in the business of selling and serving alcoholic beverages: *Stewart v. Bohnert's Estate,* 101 Cal.App.3d 978, 162 Cal.Rptr. 126 (1980); *United States Fidelity & Guaranty v. Griggs,* 341 Pa.Super. 286, 491 A.2d 267 (1985); and *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.,* 792 F.2d 1036 (11th Cir.1986).

In *Stewart,* the court found that the words of the exclusion in and of themselves were not ambiguous, noting that while exclusion (h) "may not flow well, all of the necessary words are included to apprise the reader of the policy, that it does not cover a tavern keeper who serves liquor to an intoxicated person, unless the insured is not in the business of manufacturing or serving alcoholic beverages, but is merely an owner or lessor of premises used for such purposes." *Id.,* 162 Cal.Rptr. at 129. The court then found that the policy clearly manifested an intent on the part of the

insurer not to provide coverage under the type of factual situation presented in that case.

In *USF & G* and *Lampliter, supra,* the courts similarly found exclusion (h) to be unambiguous.

We appreciate the factual distinction between this case and those present in *Stewart, USF & G,* and *Lampliter,* considering that the courts there were not confronted with a nonprofit or fraternal insured. However, we perceive it to be a distinction without a difference.

We recognize the general principle that if a contract of insurance is fairly susceptible to two constructions, one of which is more favorable to the insured than the other, the construction most favorable to the insured should be adopted. *Dairyland Ins. Co. v. Kluckman,* 86 S.D. 694, 201 N.W.2d 209 (1972); *see also Wilson v. Allstate Ins. Co.,* 85 S.D. 553, 186 N.W.2d 879 (1971); *Strong v. State Farm Mut. Ins. Co.,* 76 S.D. 367, 78 N.W.2d 828 (1956); *Cramer v. American Alliance Ins. Co.,* 72 S.D. 509, 37 N.W.2d 192 (1949); *see generally* 43 Am.Jur.2d *Insurance* § 283 (1982).

Here, however, we find no ambiguity in the language of exclusion (h)(1). It plainly and specifically excludes coverage for liability arising out of the business of selling or serving alcoholic beverages. That language could not be more clear. Words are to be given their plain meaning and effect. *Bd. of Regents v. Carter,* 89 S.D. 40, 228 N.W.2d 621 (1975). Whether we go to Webster or to Black's Law Dictionary, both of which present various definitions, it is clear that they generally refer to a commercial enterprise or activity. In this case, it is clear that Eagles operated its bar at a significant profit, the bulk of which was used to provide benefits to its members and to support its operations (for example, in 1983, Eagles realized a gross profit of $61,-683.76 but only $1549.55 was disbursed to charities); 83% of Eagles' income was generated by the bar in 1983 ($113,000); the bar operation was its single, largest revenue-producing source; non-members were allowed on the premises; it pays state sales tax on its bar operations; and obviously it

has a liquor license approved by the state and issued by the state and city.[2]

We reject the reasoning of the supreme courts of New Hampshire and Massachusetts that we should look to the character of the organization rather than the activities it performs. Eagles, irrespective of its nonprofit character, was "engaged in the business of selling and serving alcoholic beverages." It was clear on the face of the policy that such *activity* was specifically excluded from coverage. Anyone reading the policy, using the normal vernacular, would understand what it meant.[3] As a

result, we will not strain our interpretation of the contract to create an ambiguity. *Hartford Acc. & Indem. Co. v. Kuipers Const. Co.*, 327 F.2d 333 (8th Cir.1964).

AFFIRMED.

All the Justices concur.

2. Under SDCL 35–1–5 no person shall transact "the business" of selling alcoholic beverages without first obtaining a license.

3. Although not specifically addressed by the trial court, it is interesting to note that the record includes an affidavit and a deposition asserting that Eagles' local insurance agency had offered

to find liquor liability coverage for them because of the exclusion and that such coverage was available through other insurance carriers. It was asserted that Eagles was unwilling to pay the extra premiums necessary to receive that coverage.