[No. 9821-4-III.    Division Three.    June 14, 1990.]

FRATERNAL ORDER OF EAGLES, CLE ELUM, AERIE
No. 649, *Respondent,* v. GENERAL ACCIDENT
INSURANCE COMPANY OF AMERICA,
*Appellant.*

GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,
*Appellant,* v. ARTHUR E. WILCOX,
ET AL, *Respondents.*

*Willam A. Helsell, Robert N. Gellatly,* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for appellant.

*Patrick H. LePley, Tobin & LePley, Kenneth H. Davidson,* and *Davidson, Czeisler & Kilpatric,* for respondents.

THOMPSON, J.—General Accident Insurance Company of America (GAC) appeals an order on summary judgment requiring it to defend and indemnify the Cle Elum Eagles Club (the Eagles) in an action arising out of its sale of liquor. GAC claims an exclusionary clause in its general liability policy with the Eagles precludes coverage for this type of claim. We reverse and remand for entry of summary judgment in favor of GAC.

The Eagles is a nonprofit,[1] fraternal organization with approximately 1,200 members. It holds a class H club liquor license, which is available specifically to nonprofit organizations under certain conditions. *See* RCW 66.24.450; RCW 66.04.010(5). The Eagles operates its bar 14 hours per day, every day except Easter, Mother's Day, Thanksgiving and Christmas.

On March 16, 1985, Arthur Wilcox was injured when his car collided head on with a car driven by Shirley Chicklinsky, who allegedly was driving the wrong way on Interstate 90 near Cle Elum. Ms. Chicklinsky was killed in the accident. Mr. Wilcox sued the Eagles and Carol Reynolds, an

---

[1]The organization is recognized as nonprofit by the Internal Revenue Service, but until recently was not properly registered with the Secretary of State as a nonprofit corporation.

employee, alleging they served liquor to Ms. Chicklinsky shortly before the accident, when they knew or should have known she was obviously intoxicated or a habitual alcoholic.

GAC refused to defend or indemnify the Eagles based on "exclusion (h)" contained in its policy. The Eagles settled with Mr. Wilcox and assigned to him the club's rights against GAC. The Eagles then initiated this action for declaratory judgment, contesting GAC's refusal to provide coverage. GAC filed a third party complaint against various persons it believed may have claims against the policy, including Mr. Wilcox.

GAC, the Eagles and Mr. Wilcox filed motions for summary judgment. The court granted the Eagles' and Mr. Wilcox's motions, holding "exclusion (h)" does not apply to the Eagles and the policy thus provides coverage for Mr. Wilcox's claim. The sole issue in this appeal is whether "exclusion (h)" applies to the Eagles, a nonprofit fraternal organization with a restricted liquor license.

Interpretation of insurance policies is a question of law. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988). We must give the language "a fair, reasonable, and sensible construction, consonant with the apparent object and intent of the parties, a construction such as would be given the contract by the average man purchasing insurance". *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). Considering the policy as a whole, we must enforce clear and unambiguous language, and may not create an ambiguity where none exists. *Transcontinental*, at 456. An ambiguity exists only when the language is fairly susceptible of more than one reasonable interpretation. *Morgan*, at 435. If an ambiguity exists, we then must attempt to determine the parties' intent by examining various extrinsic evidence. *Transcontinental*, at 456–57. If the language remains ambiguous, we will construe it in favor of the insured. *Transcontinental*, at 457.

The exclusion at issue here provides:

This insurance does not apply:

. . . .

(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above.

GAC argues the Eagles is an "organization engaged in the business of . . . selling or serving alcoholic beverages . . .".

The exclusion is recognized generally as unambiguously applicable in general liability insurance policies covering taverns and bars. *See Williams v. United States Fid. & Guar. Co.,* 854 F.2d 106, 108 (5th Cir. 1988). The dispute here, however, is whether the Eagles' status as a nonprofit organization has an effect on the phrase: "engaged in the business of . . .".

Mr. Wilcox and the Eagles rely on the fact the Eagles is not a traditional commercial enterprise, in the sense its purpose is not to generate profits for its owners. They point out that only members and their guests are admitted, and the Eagles' liquor license requires that liquor sales be incidental to the "fraternal, benevolent, educational, athletic or social purposes . . ." of the organization. RCW 66.04-.010(5); *see* RCW 66.24.450. They also emphasize that, while the Eagles makes profits from its liquor sales, its members do not share in those profits and the money is used to defray the costs of other club activities.

This focus on the general "character" of the organization describes the approach of the Massachusetts and New Hampshire courts in similar circumstances. In *Newell–Blais Post 443, Veterans of Foreign Wars of the United States, Inc. v. Shelby Mut. Ins. Co.*, 396 Mass. 633, 487 N.E.2d 1371 (1986), the insurer denied coverage for a wrongful death claim alleging a veterans' organization was negligent in serving alcohol. The Massachusetts Supreme Court found "exclusion (h)" inapplicable:

> "Business" is defined as "a usually commercial or mercantile activity customarily engaged in as a means of livelihood." Webster's New Int'l Dictionary 302 (3d ed. 1961). "Business," as commonly understood, is thus an activity engaged in for the purpose of gain or profit. As a nonprofit organization incorporated for charitable purposes, Newell–Blais is not engaged in the "business" of selling or serving alcoholic beverages within the clear meaning of exclusion (h) (1).

*Newell–Blais*, at 635–36.

In *American Legion Post 49 v. Jefferson Ins. Co.*, 125 N.H. 758, 485 A.2d 293 (1984), the insurer denied coverage for an action alleging negligence in serving alcohol to an intoxicated person. The New Hampshire Supreme Court relied on an earlier decision that had found "exclusion (h)" ambiguous:

> "Engaged in the business of" has two common meanings. It may mean any regular activity that occupies one's time and attention, with or without direct profit motive, or it can mean an activity with a direct profit objective. Resolving the ambiguity in favor of the insured, we stated that "in the business of" had the latter, more narrow, meaning. *Laconia Rod & Gun Club v. Hartford Acc. & Indemn. Co.*, [123 N.H. 179, 183, 459 A.2d 249, 251 (1983)].
>
> Applying that definition to the present case, we hold that the Legion, a non–profit veterans' association, did not have a direct profit motive in operating its bar and, therefore, was not "in the business of" selling alcoholic beverages for the purposes of the liability exclusion clause.
>
> This conclusion is not altered by the fact that the plaintiff derived substantial revenues from the operation of its bar. It is the character of the organization, not the profitability of its liquor sales in a given month or year, which determines

whether or not an exclusionary clause, such as the one in question here, applies.

*American Legion Post 49,* at 759–60.

GAC argues the Eagles is a "business" despite its non-profit status. Its master license from the Department of Licensing identifies the Eagles as a "business" and permits it to conduct "business". It is issued "business" licenses by the City of Cle Elum and Kittitas County. It is registered with the State Tax Commission to "transact business", and pays "business and occupation" taxes on its retail liquor sales.

GAC's primary argument, however, is that the Massachusetts and New Hampshire courts incorrectly focused on the character of the insured organization, rather than on the activity for which liability was claimed. GAC emphasizes the fact that the Eagles makes a substantial profit from its liquor sales, and it "freely admit[s] that there is nothing casual or occasional about its service of alcoholic beverages at the club premises". It operates its bar full time, and pays salaries and withholds taxes for its employees just as any retail liquor establishment would.

This focus on the insured's activities reflects the approach of the South Dakota Supreme Court. The facts of *McGriff v. United States Fire Ins. Co.,* 436 N.W.2d 859 (S.D. 1989) are virtually identical to those of this case: Gertrude McGriff was injured by a man who was driving on the wrong side of the highway. She sued the Rapid City, South Dakota, Eagles club, claiming it negligently over-served him, and failed to prevent him from driving while intoxicated. The Eagles' insurer denied coverage on the basis of "exclusion (h)". The court rejected the Massachusetts and New Hampshire approach:

> [W]e find no ambiguity in the language of exclusion (h)(1). It plainly and specifically excludes coverage for liability arising out of the business of selling or serving alcoholic beverages. That language could not be more clear. Words are to be given their plain meaning and effect. *Bd. of Regents v. Carter,* 89 S.D. 40, 228 N.W.2d 621 (1975). Whether we go to Webster or

to Black's Law Dictionary, both of which present various definitions, it is clear that they generally refer to a commercial enterprise or activity. In this case, it is clear that Eagles operated its bar at a significant profit. The bulk of which was used to provide benefits to its members and to support its operations . . ..

We reject the reasoning of the supreme courts of New Hampshire and Massachusetts that we should look to the character of the organization rather than the activities it performs. Eagles, irrespective of its nonprofit character, was "engaged in the business of selling and serving alcoholic beverages." It was clear on the face of the policy that such *activity* was specifically excluded from coverage. Anyone reading the policy, using the normal vernacular, would understand what it meant. As a result, we will not strain our interpretation of the contract to create an ambiguity. *Hartford Acc. & Indem. Co. v. Kuipers Const. Co.*, 327 F.2d 333 (8th Cir.1964).

(Footnotes omitted.) *McGriff*, 436 N.W.2d at 862–63.[2]

■ We agree with the South Dakota court's focus on the insured's *activities.* The language of "exclusion (h)" suggests it is not directed exclusively to a commercial business, but rather to any "*organization* engaged in the business of . . . selling or serving alcoholic beverages . . .". (Italics ours.) Mr. Wilcox and the Eagles take the term "business" out of context by suggesting it applies only to profitmaking enterprises.

In context, we view the phrase "in the business" as limiting the exclusion's application to permanent, ongoing liquor sales operations, rather than occasional events at which the insured may sell or serve liquor. The court made this distinction in *County of Schenectady v. Travelers Ins. Co.*, 48 A.D.2d 299, 368 N.Y.S.2d 894 (1975). In that case, a passenger was injured in an accident after she and the driver

---

[2]*McGriff* observed in a footnote that the record indicated the Rapid City Eagles *knew* the club was not covered for liability arising out of liquor sales. *McGriff*, 436 N.W.2d at 863 n.3. Mr. Wilcox and the Eagles attempt to distinguish the case on that basis. However, the record here does not indicate clearly what the Cle Elum Eagles knew about their policy. Moreover, this extrinsic evidence would be relevant only if we were to find the language of the exclusion ambiguous. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys., supra* at 456–57.

had attended a party at a community college. The court held an exclusion similar to "exclusion (h)" did not apply:

The use of premises for an on–going venture of manufacturing, selling or serving alcoholic beverages creates a continuing risk of liability under New York's dram shop law, for which an insurer might wish to exclude coverage except upon payment of an additional premium. Where, however, the sale of alcohol takes place on an infrequent basis, the risk of liability is reduced, wherefore coverage might be deemed to be extended without payment of additional premiums under a general liability policy such as the one in force here. Had [the insurer] in the present case clearly intended to exclude coverage for any activity involving the sale or serving of liquor, clear language to that effect could have been employed, and any reference to "business" would have been unnecessary. Because the insurer did choose to use the word business, we think it fair to conclude that a limitation was imposed on the extent of the exclusion.

*County of Schenectady,* at 302.

Mr. Wilcox and the Eagles argue the Eagles is different from an establishment that is open to the general public. They refer to the Eagles' limited liquor license and regulations, which they view as significantly distinguishing it from more traditional purveyors. *See* WAC 314–40. Mr. Wilcox additionally argues the policy contains typewritten entries indicating the parties understood the insured was a non-profit "fraternal club". These arguments overlook the clear language of the exclusion, which provides the insurance does not apply to any claim arising out of the organization's sale of liquor. The exclusion focuses on the *specific conduct* for which liability is alleged, not on the general nature of the organization. If the Eagles is liable for Mr. Wilcox's injuries, under Washington law liability must be based on its status as a commercial or quasi–commercial host. *See Burkhart v. Harrod,* 110 Wn.2d 381, 383–84, 755 P.2d 759 (1988). It is that status to which Mr. Wilcox's claim, and the language of the exclusion, are directed.[3]

---

[3]As counsel noted during oral argument, coverage is available for liquor sales at a higher premium.

Finally, Mr. Wilcox and the Eagles argue the exclusion should not apply because the sale of liquor is merely incidental to the organization's nonprofit purposes. The club's weekly reports, indicating liquor is a major source of revenue, belie this contention. However, even if liquor sales were only a small part of the organization's activities, the result should be the same. The language of the exclusion does not require that liquor sales be a major portion of the insured's activities. *See United States Fid. & Guar. v. Griggs*, 341 Pa. Super. 286, 491 A.2d 267, 269 (1985).

The policy, given a fair, reasonable and sensible construction, unambiguously excludes coverage for Mr. Wilcox's claim against the Eagles. The decision of the trial court is reversed, and the case is remanded for entry of summary judgment in favor of GAC.

MUNSON, C.J., and GREEN, J., concur.

Review denied at 115 Wn.2d 1018 (1990).