**GRAIN DEALERS MUTUAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Hope Crawley LOWER; Roger Jones; Charles Frunk, Defendants– Appellants,**

**and**

**Jerry Leon Guynn; American Legion # 182; and Aetna Casualty and Surety Company, Defendants.**

**AETNA CASUALTY AND SURETY COMPANY, Third–Party– Plaintiff–Appellee,**

v.

**Roger JONES and Charles Frunk, Third–Party–Defendants– Appellants,**

**and**

**Jerry Leon Guynn, Third– Party–Defendant.**

**Nos. 91–5136 and 91–5137.**

United States Court of Appeals, Tenth Circuit.

Nov. 17, 1992.

Harry A. Parrish, of Knight, Wilkerson & Parrish, Tulsa, Okl., for Grain Dealers Mutl. Ins. Co., plaintiff-appellee.

Joseph F. Clark, Jr., of Clark and Stainer, P.A., and Thomas Whalen, Tulsa, Okl., for Hope Crawley Lower, Roger Jones, and Charles Frunk, defendants-appellants.

John H. Tucker, of Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Okl., for Aetna Cas. and Sur. Co., third-party-plaintiff-appellee.

Before McKAY, Chief Judge, and BARRETT, Circuit Judge, and BRIMMER,** District Judge.

BARRETT, Senior Circuit Judge.

These actions arise out of a motor vehicle accident on April 12, 1988, in which Viola Mae Frunk was killed and Hope Crawley Lower was injured. Also involved in the

** Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

accident was Jerry Leon Guynn, an uninsured and allegedly intoxicated motorist. Mrs. Lower filed a state court action against Mr. Guynn and American Legion # 182, which she alleged tortiously served liquor to Mr. Guynn prior to the accident. Roger Jones and Charles Frunk, as co-administrators of Mrs. Frunk's estate, filed a separate state court action against Mr. Guynn and American Legion # 182. Grain Dealers Mutual Insurance Company (Grain Dealers) insures American Legion # 182 under a general liability policy.

Mrs. Frunk was an authorized independent Tupperware distributor, who was assigned a car owned by Premark International Corporation (Premark), the parent company of Tupperware Home Parties. Premark's fleet of more than 8,000 vehicles is insured under a business auto policy by Aetna Casualty and Surety Company (Aetna). Premark's fleet policy includes uninsured motorist coverage and, as an authorized independent Tupperware distributor, Mrs. Frunk was an "additional insured" under this policy. Accordingly, Mr. Jones and Mr. Frunk, on behalf of Mrs. Frunk, named Aetna a defendant in their state court action, seeking uninsured motorist benefits under Premark's fleet policy.

After the state court actions were filed, plaintiff-appellee Grain Dealers filed pursuant to 28 U.S.C. § 2201 the underlying action, seeking a declaratory judgment that it was not liable under American Legion # 182's general liability policy for damages caused by American Legion # 182's allegedly tortious act. Third-party plaintiff-appellee Aetna also filed its third-party complaint, seeking a declaratory judgment that it had only limited liability for uninsured motorist benefits under Premark's business auto policy to Mr. Jones and Mr. Frunk, on behalf of Mrs. Frunk.

The district court, in an order filed August 6, 1991, granted summary judgment in favor of plaintiff-appellee Grain Dealers and third-party-plaintiff-appellee Aetna in

their declaratory judgment actions. Defendants-appellants Mrs. Lower, Mr. Jones, and Mr. Frunk appeal from this order. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.[1]

## I

As a threshold matter, Grain Dealers submits, without support, that Appellants lack standing to appeal the district court order granting summary judgment. The gist of Grain Dealers' argument is as follows: Appellants are third parties who have a claim against Grain Dealers for insurance proceeds, if at all, only through American Legion # 182, its insured. The district court determined that Grain Dealers' policy with American Legion # 182 does not provide coverage for American Legion # 182's allegedly tortious act upon which Appellants' state court actions against American Legion # 182 are based. Because American Legion # 182, also a defendant in Grain Dealers' declaratory judgment action, chose not to appeal the district court's judgment of no coverage, that judgment is final as to American Legion # 182. Therefore, according to Grain Dealers, Appellants' right to appeal the judgment must also have been extinguished.

Grain Dealers errs. Where, as here, the appellant is a potential judgment creditor claiming liability in a state tort suit against the insured and is also a named defendant in the insurer's declaratory judgment action against the insured, the appellant has standing to appeal from the district court's determination that the insurer is not liable to the insured under the policy, even if the insured chooses not to appeal. See *Dairyland Ins. Co. v. Makover*, 654 F.2d 1120, 1123 (5th Cir.1981). Appellants filed state court actions against American Legion # 182, seeking damages for its allegedly tortious conduct. Grain Dealers voluntarily named Appellants as co-defendants with American Legion # 182 in its declaratory judgment action. Therefore,

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Appellants have standing to appeal the district court judgment, even though American Legion # 182 chose not to appeal. Grain Dealers' motion to dismiss on this basis is therefore denied.

Turning to the merits, then, Appellants make two arguments: (1) American Legion # 182 is not "in the business" of selling or serving alcoholic beverages and therefore its potential liability does not fall within a policy exclusion asserted by Grain Dealers; and (2) uninsured motorist coverage can be "stacked" under Oklahoma law and should be "stacked" under the clear language of Premark's policy with Aetna.[2]

## II

■ Whether American Legion # 182, a nonprofit organization, is "in the business" of selling or serving alcoholic beverages is a question of first impression in Oklahoma. Our review of the district court's determination of state law is de novo. *Salve Regina College v. Russell,* — U.S. —, —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

The policy exclusion states, in pertinent part:

2. Exclusions.

This insurance does not apply to:

. . . .

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

*See* Brief in Chief, Attachment "Commercial General Liability Coverage Form," § 1A. ¶ 2.c. The phrase "in the business" is not defined in the policy. Appellants' argument that American Legion # 182 is not "in the business" of selling or serving alcohol is based on American Legion # 182's nonprofit status. Appellants concede that American Legion # 182 sells and serves liquor five days a week and generates significant revenues from these sales.

■ As already indicated, there are no Oklahoma cases on point. The four cases from other jurisdictions are evenly split on flatly contradictory reasoning. Two of these jurisdictions, in the absence of a definition of "business" in the policy at issue, construed the term narrowly in favor of the insured. *See Newell–Blais Post No. 443, VFW, Inc. v. Shelby Mut. Ins. Co.,* 396 Mass. 633, 487 N.E.2d 1371, 1373 (1986) ("business" not defined in policy and therefore given ordinary and usual meaning, in favor of nonprofit insured); *American Legion Post No. 49 v. Jefferson Ins. Co.,* 125 N.H. 758, 485 A.2d 293, 294 (1984) ("in the business" ambiguous and therefore given ordinary, narrow meaning, in favor of nonprofit insured; following *Laconia Rod & Gun Club v. Hartford Accident & Indem. Co.,* 123 N.H. 179, 459 A.2d 249, 251 (1983)).

The other two jurisdictions find "in the business" to unambiguously include a nonprofit organization if its permanent, ongoing liquor sales generate significant revenues and are regulated like a business. *See Fraternal Order of Eagles, Cle Elum, Aerie No. 649 v. General Accident Ins. Co.,* 58 Wash.App. 243, 792 P.2d 178, 182–83 (1990) ("business" not ambiguous and fraternal organization with permanent, ongoing liquor sales falls within term); *McGriff ex rel. Norwest Capital Management & Trust Co. v. United States Fire Ins. Co.,* 436 N.W.2d 859, 862–63 (S.D.1989) ("business" unambiguously means commercial activity without regard to nonprofit character of organization).

**2.** Appellants suggest certifying these questions to the Oklahoma Supreme Court in their opening brief. Brief in Chief, at 23. This suggestion is insufficient. "A request for certification must

be made by separate motion, filed contemporaneously with the moving party's brief on the merits." 10th Cir.R. 27.1.

The courts in *Newell–Blais* and *Legion No. 49* used similar reasoning and reached the same result. The *Newell–Blais* court determined that "business," since it was not defined in the policy, would be given its ordinary meaning—"an activity engaged in for the purpose of gain or profit." *See Newell–Blais*, 487 N.E.2d at 1373. Since the nonprofit organization was organized for charitable purposes, not for profit, it was not clearly "in the business" of selling liquor and therefore the policy exclusion did not apply. *Id.*

The *Legion No. 49* court found "business" to be ambiguous, meaning either an activity with a direct profit motive, or merely a regular activity occupying time and attention. *See Legion No. 49*, 485 A.2d at 294. Since the term was ambiguous, then although the activity of selling liquor made money, the character of the organization as nonprofit led the court to construe the term narrowly, in favor of the insured. *See id.* at 294–95. A nonprofit organization does not have a direct profit motive like a commercial venture, and therefore the policy exclusion did not clearly apply to the nonprofit insured. *See id.* at 295.

The courts in *Eagles* and *McGriff* reached the opposite result. The *McGriff* court found "in the business" to unambiguously mean a commercial *activity*, and therefore the nonprofit *character of the organization* did not control. *See McGriff*, 436 N.W.2d at 862–63. The court's view was reinforced by the facts before it: the bar generated large profits, virtually all of the money went to member benefits and operations and almost none went to charity, the bar was the organization's single largest source of revenue, nonmembers were allowed, and the organization had a liquor license and paid taxes on the bar operations. *See id.* The court had no difficulty concluding that the nonprofit organization was an "organization engaged in the business of ... selling or serving alcoholic beverages," because the *activity* is what was targeted by the policy exclusion. *Id.* at 861, 863.

The *Eagles* court took a similar approach, specifically distinguishing between "permanent, ongoing liquor sales operations" by an insured, whether a profit-making tavern or a nonprofit organization, and "occasional events" where an insured sells or serves liquor. *Eagles*, 792 P.2d at 182–83. The court read the exclusionary language as targeting the *activity* of selling liquor, and so the nonprofit *character of the organization* did not control. *Id.* at 183. The court rejected the insured's arguments that went to the character of the organization—that its liquor license was limited and it was a private club—and pointed out that state tort liability for furnishing alcohol extended to quasi-commercial as well as commercial hosts. *Id.*

We believe the reasoning of *Eagles* and *McGriff* is more consistent with Oklahoma law than that of *Newell–Blais* and *Legion No. 49*, and that the Oklahoma courts, if presented with the question, would hold that the exclusionary language "in the business of ... selling [or] serving alcoholic beverages" in Grain Dealer's policy with American Legion #182 unambiguously includes nonprofit organizations with ongoing liquor sales operations. Although Appellants contend that Oklahoma makes a meaningful distinction between nonprofit and for-profit organizations under the Oklahoma Alcoholic Beverage Control Act, Okla.Stat. tit. 37, §§ 501–599 (1991), we are unpersuaded. Appellants point out that American Legion #182, as a federal tax-exempt organization, pays less for its mixed beverage liquor license than does a for-profit business. *See* Okla.Stat. tit. 37, § 518. It appears to us, however, that there is no other exception for nonprofit organizations to any regulation in the Act. For example, nonprofit organizations are subject to city and county occupation taxes to the same extent as for-profit businesses. *See* Okla.Stat. tit. 37, §§ 554.1, 554.2. And nonprofit organizations, like for-profit businesses, are required to obtain a mixed beverage tax permit. *See* Okla.Stat. tit. 37, § 577. This permit is issued for places of *business* and is only issued upon verification that the applicant holds a sales tax permit and guarantees payment of gross

receipts taxes. *See id.* The phrases "engaged in a business" and "place of business" are used throughout this section. *See id.* The language of this section alone indicates that Oklahoma considers nonprofit organizations selling liquor to be "in the business" of selling or serving alcoholic beverages.

In addition, under Oklahoma law, liability for furnishing alcohol extends to any "commercial vendor who sells alcoholic beverages for on the premises consumption." *See Brigance v. Velvet Dove Restaurant, Inc.,* 725 P.2d 300, 304 (Okla.1986). Although Oklahoma has not yet specifically considered a nonprofit organization defendant,[3] the "commercial vendor who sells alcoholic beverages" language of *Brigance* clearly seems broad enough to include such a defendant.[4] We note in this regard that American Legion # 182 has a *commercial* liability insurance policy. *See* Brief in Chief, Attachment "Commercial General Liability Coverage Form."

In summary, we believe that were the Oklahoma courts to consider the question, they would hold that the exclusionary language "in the business of ... selling [or] serving alcoholic beverages" in Grain Dealer's policy with American Legion # 182 unambiguously applies to American Legion # 182's ongoing liquor sales operations.

### III

■ Appellants next argue that uninsured motorist coverage can be "stacked" under Oklahoma law and that they, on behalf of Mrs. Frunk, are entitled to "stack" the uninsured motorist coverage for all 8,000–plus vehicles covered under the "clear and cogent" language of Premark's fleet policy with Aetna. We agree with the first proposition, but not the second one.

"As a court sitting in diversity, we must apply a state supreme court's most recent statement of state law." *Southwest Forest Indus., Inc. v. Sutton,* 868 F.2d 352, 354 (10th Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1320, 108 L.Ed.2d 496 (1990). Oklahoma law provides that "where an insured has paid [multiple] premiums for uninsured motorist insurance contained in a single policy covering [multiple] vehicles, the extent of uninsured motorist coverage is the aggregate limit of coverages corresponding to the number of separate uninsured motorist insurance premiums paid by the insured." *Lake v. Wright,* 657 P.2d 643, 644 (Okla.1982) (quoting *Richardson v. Allstate Ins. Co.,* 619 P.2d 594, 598 (Okla.1980)). Oklahoma has further determined that uninsured motorist coverage can be aggregated, or "stacked," in this manner in a fleet insurance policy when the injured claimant is a Class I insured, *Aetna Casualty & Sur. Co. v. Craig,* 771 P.2d 212, 214 (Okla.1989), and multiple premiums were paid for the several vehicles, *Scott v. Cimarron Ins. Co.,* 774 P.2d 456, 458 (Okla.1989). "ONLY Class I insureds may stack the uninsured motorist protection in a commercial fleet insurance policy." *Aetna,* 771 P.2d at 214.

Premark's fleet policy covers more than 8,000 vehicles. Brief of Appellee Aetna Casualty & Sur. Co., at 4. Although the policy language clearly allows stacking, Premark paid a single premium of $100 for uninsured motorist coverage at the statutory minimum, $10,000 per person, for all of these vehicles. *Id.,* Attachments A–1, A–3, A–5. The policy designates Premark as the named insured, *id.,* Attachment A–1, and provides that authorized independent Tupperware distributors, such as Mrs. Frunk, are additional insureds, *id.,* Attachment A–2.

As an additional insured under the policy, Mrs. Frunk was a Class II insured under Oklahoma law and may not stack uninsured motorist coverage. *Stanton v.*

---

3. The Oklahoma Supreme Court declined to give *Brigance* retroactive effect, and so it affirmed the dismissals for failure to state a claim appealed in *McClelland v. Harvie Kothe–Ed Rieman, Post No. 1201, VFW, Inc.,* 770 P.2d 569, 570 (Okla.1989), one of which involved a nonprofit organization defendant.

4. The open question in Oklahoma is whether liability for furnishing alcohol will be extended to *social* hosts. *See Kellogg v. Ohler,* 825 P.2d 1346, 1347, 1349 (Okla.1992) (there being no social hosts on the facts, question of extending "dram shop" liability must await another day).

*American Mut. Liab. Ins. Co.,* 747 P.2d 945, 946–47 (Okla.1987). Even if she had been a Class I insured, however, common sense as well as state law indicate that stacking is unavailable when the purchaser chose to pay only one premium for limited coverage. *See Scott,* 774 P.2d at 458.

Premark paid only a single premium of $100 for uninsured motorist coverage for all 8,000–plus vehicles in its fleet. Appellants may not stack this coverage. To hold otherwise would entitle Appellants to claim total coverage of more than $80,000,000 (8,000 × $10,000) for Premark's $100 premium—clearly an absurdity. *See Stanton,* 747 P.2d at 947.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.