KAREN NELSON MOORE,
concurring in part and dissenting in part.
The majority holds that Speedway was entitled to neither indemnification nor a defense from Virginia Surety because it was “in the business of’ selling alcohol. *387 Because I conclude that Speedway was not “in the business of’ selling alcohol, the CGL Policy’s liquor liability exclusion is not applicable in this case. Accordingly, Virginia Surety had a duty to defend and to indemnify Speedway in the wrongful death lawsuit filed by Cynthia Bivens’s estate. I respectfully dissent from the portion of the majority opinion that relieves Virginia Surety of its duties to defend and indemnify.
Because the CGL Policy does not define what it means to be “in the business of’ selling alcohol, the court’s first task is to determine as a matter of law how to define the term. See Auto-Owners Ins. Co. v. Veterans of Foreign Wars Post 5906, 276 S.W.3d 298, 301 (Ky.Ct.App.2009). Kentucky courts have embraced two alternative meanings of the term “in the business of’: (1) “any regular activity that occupies one’s time and attention, with or without direct profit motive” or (2) “an activity with a direct profit motive.” Id. (citing Am. Legion Post No. 49 v. Jefferson Ins. Co., 125 N.H. 758, 485 A.2d 293 (1984)). Courts apply “the general principle that if a contract of insurance is fairly susceptible to two constructions, one of which is more favorable to the insured than the other, the construction most favorable to the insured should be adopted.” McGriff v. U.S. Fire Ins. Co., 436 N.W.2d 859, 862 (S.D.1989); see also Am. Legion, 485 A.2d at 294-95 (applying the second alternative definition because it was more favorable to the insured). Under the first alternative definition, an insured is not “in the business of’ selling alcohol, even if the insured has a profit motive in alcohol sales as Speedway did in this case, so long as the sale of alcohol is not a fairly significant aspect of the business. Thus, the first alternative is more favorable to Speedway and should be utilized in this case.
Speedway did not itself engage in alcohol sales, but instead made the strategic business decision to contract responsibility for alcohol sales, and the attendant liability, to concessionaires. R. 27-5 (Concession Agreement) (Page ID # 402-16). The fact that Speedway allowed liquor sales on its property on a regular basis is not dis-positive because Speedway did not itself run alcohol sales operations. Although Speedway had final approval authority over some aspects of alcohol sales, such as decisions relating to pricing and which events would include alcohol sales, id. at 2-3 (Page ID # 403-04), alcohol sales did not occupy significant time or attention of Speedway executives or employees. Indeed, Speedway contracted alcohol sales to a vendor specifically so that the amenity would be available for customers without drawing attention away from other vital aspects of operating the speedway, such as obtaining sponsorships and regulating ticket sales. R. 28-11 (Simendinger Dep. at 46-47, 61) (Page ID # 635, 639).
The majority concludes that “Speedway and its concessionaires were engaged in a joint enterprise of selling alcohol” because they worked together “to maximize the sale of alcohol and the profits that resulted from it.” Maj. Op. at 383-84. If Speedway were engaged in a true joint venture with its concessionaires, then Speedway would be considered a partner in the business of the concessionaires, which included alcohol sales. See Huff v. Rosenberg, 496 S.W.2d 352, 355 (Ky.1973). However, because there was no agreement between Speedway and the concessionaires to share profits and losses, there was no “community of pecuniary interest.” Roethke v. Sanger, 68 S.W.3d 352, 364 (Ky.2001) (citation omitted). Thus, there was no joint venture in place under which Speedway could be considered as “in the business of’ selling alcohol. To the extent that the majority analyzes whether Speedway was in an *388 agency relationship with its concessionaires, its efforts are misplaced: an agency relationship is not relevant to determining the contours of Speedway’s business because the master in an agency relationship is not a partner in the agent’s business. The sale of alcohol was not a “regular activity” to which Speedway, as opposed to its concessionaires, devoted significant time and attention, and thus I conclude that Speedway was not “in the business of’ selling alcohol. Therefore, the liquor liability exclusion contained in the CGL Policy does not apply, and Virginia Surety has an obligation to indemnify Speedway for the expenses incurred in settling the lawsuit brought by Cynthia Bivens’s estate.
I also conclude that Virginia Surety had a duty to defend Speedway against Bivens’s lawsuit. As the majority explains, “an insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy.” Aetna Cas. & Sur. Co. v. Com., 179 S.W.3d 830, 841 (Ky.2005). This duty is broader than the duty to indemnify, James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co., 814 S.W.2d 273, 280 (Ky.1991), and clearly includes all suits in which the insurer must indemnify the insured.
Although I respectfully dissent from the majority with respect to Virginia Surety’s appeal regarding its duties to defend and indemnify Speedway, I agree that Virginia Surety did not act in bad faith such that it is subject to liability under the Unfair Claims Settlement Practices Act. Ky.Rev. Stat. § 304.12-230. As the divided opinions within this panel confirm, Virginia Surety had a “reasonable basis in law ... for denying the claim,” United Servs. Auto. Ass’n v. Bult, 183 S.W.3d 181, 186 (Ky.Ct.App.2003) (citation omitted), and it therefore did not deny coverage in bad faith.
For the foregoing reasons, I would AFFIRM the judgment of the district court in its entirety.